08-30-4885                                           ARDC No. 01144642

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

THORNCREEK APARTMENTS III, LLC, a )
foreign limited liability company, **D/B/A THE** )
**LOFTS AT THORNCREEK**; **THORNCREEK** )
**MANAGEMENT, LLC**, a foreign limited liability )
company, )
           )       Case Number: **08 C 1225**
    Plaintiffs, )                         Honorable: John W. Darrah
           )       Magistrate Martin C. Ashman
v. )                                                 **JURY DEMAND**
           )
**VILLAGE OF PARK FOREST**, an Illinois )
municipal corporation; **TOM MICK**, in his )
individual capacity and as Village Manager; )
**MAE BRANDON**, in her individual capacity )
and as Village Trustee; **BONITA DILLARD**, )
in her individual capacity and as Village Trustee; )
**GARY KOPYCINSKI**, in his individual capacity )
and as Village Trustee; **KENNETH W. KRAMER**,)
in his individual capacity and as Village Trustee; )
**ROBERT MCCRAY**, in his individual capacity )
and as Village Trustee; **GEORGIA O'NEILL** )
in her individual capacity and as Village )
Trustee; **LAWRENCE KERESTES**, in his )
individual capacity and as Village )
Director of Community Development; **JOHN** )
**A. OSTENBURG**, in his individual capacity and )
as mayor of the Village of Park Forest; **SHEILA** )
**MCGANN**, in her capacity as Village clerk only; )
and **JOHN** and **JANE DOE**, individual employees, )
officers, and/or agents of the Village of Park Forest, )
           )
    Defendants, )
           )
    Jointly and Severally. )
_____)

## DEFENDANTS' ANSWER TO PLAINTIFFS' AMENDED COMPLAINT

NOW COME the Defendants, VILLAGE OF PARK FOREST, an Illinois

Municipal corporation; TOM MICK, MAE BRANDON, BONITA DILLARD, GARY

KOPYCINSKI, KENNETH W. KRAMER, ROBERT McCRAY, GEORGIA O'NEILL, LAWRENCE KERESTES, JOHN A OSTENBURG, and SHEILA McGANN, by and through their Attorneys, HARTIGAN & O'CONNOR P.C., and for their Answer to Plaintiffs' Amended Complaint at Law hereby state as follows:

## PARTIES, JURISDICTION, AND VENUE

1.   **Plaintiff Thorncreek Apartments III, LLC ("Thorncreek III")** is a limited liability company organized under the laws of the State of Michigan, with its principal place of business in Farmington Hills, Michigan, conducting business as a rental property in the Village of Park Forest, which is located in Cook County, Illinois.

**ANSWER:**   The Defendants have knowledge insufficient to form a belief as to the truth or falsity of the Allegations contained in  Paragraph One (1.) of Plaintiff's Complaint, and, therefore, neither admit nor deny same, but demand strict proof thereof.

2.   **Plaintiff Thorncreek Management, LLC ("Thorncreek Management")** is a limited liability company organized under the laws of the State of Michigan, with its principal place of business in Farmington Hills, Michigan, and is the owner of Thorncreek III.

**ANSWER:**   The Defendants have knowledge insufficient to form a belief as to the truth or falsity of the Allegations contained in  Paragraph Two (2.) of Plaintiff's Complaint, and, therefore, neither admit nor deny same, but demand strict proof thereof

2

3.      **Defendant Village of Park Forest ("Village")** is an Illinois municipality located in Park Forest, Illinois, and primarily conducting business at 350 Victory Drive, Park Forest, IL  60466.

**ANSWER:**    The Defendants admit the Allegations contained in  Paragraph Three (3.) of Plaintiff's Complaint.

4.      **Defendant Tom Mick ("Mick")** is the Village Manager of the Village, holding an office at 350 Victory Drive, Park Forest, IL  60466 and residing, on information and belief, in Cook County.

**ANSWER:**    The Defendants admit the Allegations contained in  Paragraph Four (4.) of Plaintiff's Complaint.

5.      **Defendant Mae Brandon ("Brandon")** is a Trustee of the Village, holding an office at 350 Victory Drive, Park Forest, IL  60466 and residing, on information and belief, at 28 Braeburn Dr., Park Forest, IL 60466-2503.

**ANSWER:**    The Defendants admit the Allegations contained in  Paragraph Five (5.) of Plaintiff's Complaint.

6.      **Defendant Bonita Dillard ("Dillard")** is a Trustee of the Village, holding an office at 350 Victory Drive, Park Forest, IL  60466 and residing, on information and belief, in Cook County, Illinois.

**ANSWER:**    The Defendants admit the Allegations contained in  Paragraph Six (6.) of Plaintiff's Complaint.

7.    **Defendant Gary Kopycinski ("Kopycinski")** is a Trustee of the Village, holding an office at 350 Victory Drive, Park Forest, IL 60466 and residing, on information and belief, in Cook County.

**ANSWER:**    The Defendants admit the Allegations contained in  Paragraph Seven (7.) of Plaintiff's Complaint.

8.    **Defendant Kenneth W. Kramer ("Kramer")** is a Trustee of the Village, holding an office at 350 Victory Drive, Park Forest, IL 60466 and residing, on information and belief, at 152 Shabbona Dr., Park Forest, IL 60466-2553.

**ANSWER:**    The Defendants admit the Allegations contained in  Paragraph Eight (8.) of Plaintiff's Complaint.

9.    **Defendant Robert McCray ("McCray")** is a Trustee of the Village, holding an office at 350 Victory Drive, Park Forest, IL 60466 and residing, on information and belief, in Cook County.

**ANSWER:**    The Defendants admit the Allegations contained in  Paragraph Nine (9.) of Plaintiff's Complaint.

10.     **Defendant Georgia O'Neill ("O'Neill")** is a Trustee of the Village, holding an office at 350 Victory Drive, Park Forest, IL  60466 and residing, on information and belief, at 204 Hickory St., Park Forest, IL 60466-1016.

**ANSWER:**     The Defendants admit the Allegations contained in  Paragraph Ten (10.) of Plaintiff's Complaint.

11.     **Defendant Lawrence Kerestes ("Kerestes")** is the Director of Community Development of the Village, and, on information and belief, he is the Village Building Commissioner, holding an office at 350 Victory Drive, Park Forest, IL 60466 and residing, on information and belief, at 316 N Orchard Dr., Park Forest, IL 60466-1141.

**ANSWER:**     The Defendants admit the Allegations contained in  Paragraph Eleven (11.) of Plaintiff's Complaint.

12.     **Defendant John A. Ostenburg ("Ostenburg")** is the Mayor of the Village and the President of the Village Board of Trustees, holding an office at 350 Victory Drive, Park Forest, IL 60466 and residing, on information and belief, in Cook County.

**ANSWER:**     The Defendants admit the Allegations contained in  Paragraph Twelve (12.) of Plaintiff's Complaint.

13.    **Defendant Sheila McGann ("McGann")** is the Village Clerk, holding an office at 350 Victory Drive, Park Forest, IL 60466 and residing, on information and belief, in Cook County.

**ANSWER:**    The Defendants admit the Allegations contained in Paragraph Thirteen (13.) of Plaintiff's Complaint.

14.    The **John** and **Jane Doe** Defendants are unknown employees or agents of the Village that committed and/or assisted in committing the acts described herein.

**ANSWER:**    The Defendants have knowledge insufficient to form a belief as to the truth or falsity of the Allegations contained in Paragraph Fourteen (14.) of Plaintiff's Complaint, and, therefore, neither admit nor deny same, but demand strict proof thereof.

15.    This Court has original jurisdiction over this Complaint because federal questions are presented with regard to Thorncreek III and Thorncreek Management's claims arising under 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988, thus invoking jurisdiction under 28 U.S.C §§ 1331 and 1343; and because any claims arising under state law are claims in excess of $75,000.00 with complete diversity, this Court has jurisdiction under 28 USC § 1332.

**ANSWER:**    The Defendants have knowledge insufficient to form a belief as to the truth or falsity of the Allegations contained in  Paragraph Fifteen (15.) of Plaintiff's Complaint, and, therefore, neither admit nor deny same, but demand strict proof thereof.


16.    Substantially all of the events and/or omissions giving rise to Thorncreek III and Thorncreek Management's claims occurred in the Village and/or Cook County.  Venue is therefore appropriate in this Court under 28 U.S.C. §§ 1391 and 1443.

**ANSWER:**    The Defendants deny the existence of any actionable claims or omissions. The Defendants have knowledge insufficient to form a belief as to the truth or falsity of the Allegations as to venue contained in  Paragraph Sixteen (16.) of Plaintiff's Complaint and, therefore, neither admit nor deny same, but demand strict proof thereof.


17.    This Court has personal jurisdiction over the Village because it is situated in the State of Illinois and over individual Defendants because they reside in Illinois.

 **ANSWER:**    The Defendants admit the Allegations contained in  Paragraph Seventeen (17.) of Plaintiff's Complaint.


## COMMON ALLEGATIONS

18.    Thorncreek III operates and manages a group of rental townhomes sometimes known as Area H of the Lofts at Thorncreek, formerly known as Thorncreek

Townhomes, in the Village.  Thorncreek III has operated Area H for a number of years.  Thorncreek Management is the owner of Thorncreek III.

**ANSWER:**    The Defendants have knowledge insufficient to form a belief as to the truth or falsity of the Allegations contained in  Paragraph Eighteen (18.) of Plaintiff's Complaint, and, therefore, neither admit nor deny same, but demand strict proof thereof.

19.    The racial make-up of the tenants in Area H and the Lofts at Thorncreek in general has usually varied from approximately 80% to 90% African American.

**ANSWER:**  The Defendants have knowledge insufficient to form a belief as to the truth or falsity of the Allegations contained in  Paragraph Nineteen (19.) of Plaintiff's Complaint, and, therefore, neither admit nor deny same, but demand strict proof thereof. From this Paragraph, Plaintiff is telling us this is the case.

### DENIAL OF A BUSINESS LICENSE

20.    In order to operate and rent a multi-family dwelling in the Village, the Village Code of Ordinances (the "Ordinance"), Chapter 22-467, requires one to obtain a license.  For the years of 2005, 2006, and 2007, the Village has unlawfully denied Thorncreek III a license.

**ANSWER:**    The Defendants admit the Allegations of the beginning sentence contained in  Paragraph Twenty (20.) of Plaintiff's Complaint, but deny the allegations contained in the second sentence of this Paragraph.

21.    Chapter 22-468 (a) sets forth the criteria an applicant for a business license must provide the Village if one desires to operate a multi-family dwelling in the Village.   Subsection (b) of the same sets forth exhaustive reviewing criteria of an application:

> Every such application shall be reviewed by the village manager, who shall issue the license if the information stipulated in subsection (a) of this section has been supplied, and if, for an application for a renewal of a license, the applicant is deemed to have made a good-faith effort to comply with all the applicable sections of article IIII of chapter 18 and this chapter. The village manager shall require payment of a fee in the amount of $100.00 with each license application.

**ANSWER**:    The Defendants admit the Allegations contained in  Paragraph Twenty One (21.) of Plaintiff's Complaint, but object to the terminology "exhaustive".

22.    The referenced Chapter 18, Article IIII in subsection (b) of the Ordinance deals principally with the standards, duties, and responsibilities of the owner of a dwelling, as well as the required basic equipment, facilities, lighting, ventilation, heating, and minimum maintenance requirements of said dwelling. *See* Ordinance, Ch. 18, art. III, Divs. 1-4.

**ANSWER:**    The Defendants admit the Allegations contained in  Paragraph Twenty Two (22.) of Plaintiff's Complaint.

23.    For the years 2005, 2006, and 2007, Thorncreek, III and Thorncreek Management's applications with the Village properly contained the information as specified in § 22-30 and § 22-468 (a).  Thorncreek III and

Thorncreek Management also paid the requisite $100.00 license fees as specified in subsection (b) and §§ 22-33 and 22-35. Lastly, Thorncreek III and Thorncreek Management, at all relevant times hereto, have "made a good-faith effort to comply with all the applicable sections of article IIII of chapter 18" of the Ordinance.

**ANSWER:** The Defendants deny the Allegations contained in Paragraph Twenty Three (23.) of Plaintiff's Complaint, and admit payment of license fee and deny any "good faith effort" made by the Plaintiffs here.

24. In addition to the above, Thorncreek III and Thorncreek Management submitted detailed management plans for Thorncreek III for the years 2005, 2006, and 2007, plans which were far more extensive than management plans submitted by similarly situated applicants.

**ANSWER:** The Defendants deny the Allegations contained in Paragraph Twenty Four (24.) of Plaintiff's Complaint.

25. In spite of the above, Village Manager Mick has refused to issue business licenses for Thorncreek III and Thorncreek Management for 2005, 2006, and 2007.

**ANSWER:** The Defendants admit the Allegations contained in Paragraph Twenty Five (25.) of Plaintiff's Complaint, based on non-compliance with Village of Park Forest ordinances.

26.     Mick and/or his superiors (i.e., Ostenburg and/or the Village Board of Trustees) are responsible for establishing final government policy with respect to issuing a business license.

**ANSWER:**    The Defendants deny the Village Manager has responsibility for final government policy, and standards for Business Licenses are set forth in the Village's Code of Ordinances.


27.     Village Clerk McGann and/or the predecessor Village Clerk has refused to issue business licenses for Thorncreek III and Thorncreek Management for 2005, 2006, and 2007, despite obligation under Chapter 22-28 (b) to do so.

**ANSWER:**    The Defendants admit the Allegations contained in  Paragraph Twenty Seven (27.) of Plaintiff's Complaint, since the Plaintiff has not complied with Village of Park Forest Code of Ordinances.


28.     McGann and/or the predecessor Village Clerk, and/or their respective superiors (i.e., Ostenburg, Mick, and/or the Village Board of Trustees) are responsible for establishing final government policy with respect to issuing a business license.

**ANSWER:**    The Defendants deny that the Village Clerk is responsible for final Village policy, or the Village Manager.


29.     The Village's refusal to issue business licenses to Thorncreek III is based on:

(i) Thorncreek III and Thorncreek Management's proper refusal to comply

with terms required by the Village that have no support in the Ordinance; (ii) The Village and its agents' (e.g., Mick, Kerestes, Ostenburg, and the several Board members) disdain and hatred of the minority tenants at the Lofts at Thorncreek and its owners and managers; (iii) The Village's desire to systemically drive out the Thorncreek management and African American tenants at the Lofts at Thorncreek. The conspiracy goes to the highest levels of Village government (Ostenburg and Board of Trustee members) through the lower enforcement levels (e.g., housing inspectors, police, fire department).

**ANSWER:** The Defendants deny the Allegations contained in Paragraph Twenty Nine (29.) of Plaintiff's Complaint, and its subparts (i), (ii), and (iii), and deny any Conspiracy.


30.    In furtherance of the allegations above, and by way of example, on March 22, 2006, a telephone conference was held between Alejandro Martinez of Lehman Brothers, a Mr. Nichol of Lehman Brothers (a financial institution), and Kerestes. Lehman Brothers at the time was interested in entering into a commercial relationship with the Thorncreek entities (there are several Thorncreek entities which own and operate various areas of the Lofts at Thorncreek).

**ANSWER:** Defendant, KERESTES, denies the date specified in this Paragraph, as to any conference, and denies it was the Lofts of Thorncreek. He admits a conference call earlier than the date referenced in Paragraph Thirty (30.) of Plaintiff's Complaint.

31.    During the telephone conference, Lehman Brothers inquired as to the status of Thorncreek's business license (other Thorncreek entities have been denied business licenses by the Village and its agents).  Kerestes indicated that before the Village would issue a business license to the Thorncreek entities, the Thorncreek entities would have to commit $6,000,000.00 of capital improvements at the Lofts at Thorncreek.  Two specific improvements that Kerestes mentioned had to be made before a license would issue were the installation of new windows throughout the Thorncreek complexes and the installation of central air conditioning units.  Kerestes indicated that no license to operate would be issued unless a commitment was made for capital improvements consistent with the demands mentioned above.

**ANSWER:**    The Defendants admit a representative of Lehman inquired as to the status of the Thorncreek license.  They deny that a commitment would have to occur of Six Million ($6,000,000.00) Dollars before a license was issued.  They admit the Village was looking for investment back into property.  They deny that no license would issue until a major capital improvement was made.


32.    During the same telephone conference, Kerestes also indicated that Thorncreek was "80% black," "far above the Village average," and that the Village wanted the racial make-up of the residents at Thorncreek to be similar to the rest of the Village; i.e., more "white."  Kerestes also indicated that the rents at Thorncreek were too low, and that the Village wanted the rents to be

increased so that Thorncreek would be "more attractive to whites," and in order to change the racial make up.

**ANSWER:**    The Defendants admit a conversation occurred as to Thorncreek's commitment to the Village as to its investment in Thorncreek Apartments.  They deny any mention of blacks and deny the remaining Allegations contained in  Paragraph Thirty Two (32.) of Plaintiff's Complaint.

33.    Over the years, the Village, through its agents, has made demands that Thorncreek III and Thorncreek Management invest substantial amounts of money into the structure, infrastructure, and amenities at the Lofts at Thorncreek as a precondition to the issuance of business licenses.

**ANSWER:**    The Defendants admit it encouraged, not pressured, investment into the property.  They deny any pre-condition to the issuance of business licenses.

34.    None of the above "conditions" for a business license cited by Kerestes or the Village are required under Chapter 18, Article IIII of the Ordinance or Chapter 22-468 of the Ordinance.

**ANSWER:**    The Defendants are uncertain what "conditions" are made mention of, but admit the conditions in Paragraph Thirty Three (33.) are not part of Chapter 18, but deny Kerestes cited these as any prerequisite to a license.

35.    The Thorncreek entities' non-compliance with the Village's and Kerestes' demands is not a proper basis for the denial of a business license under

Chapter 22-468.  For Thorncreek III and Thorncreek Management to comply with certain of the Village's requirements would require Thorncreek III and Thorncreek Management to violate local, state, and federal law, including 42 USC §§ 3604, 3617, 3631 (the Fair Housing Act).

**ANSWER:**    The Defendants are uncertain as to what non-compliance is being referenced and, thus, have knowledge insufficient to form a belief as to the truth or falsity of the Allegations contained in  Paragraph Thirty Five (35.) of Plaintiff's Complaint, and, therefore, neither admit nor deny same, but demand strict proof thereof.

36.    The Village's vision for Thorncreek to be "more attractive to whites"; the Village's desire to see the rents increased to discourage African American and Hispanic tenants; the Village's desire that Thorncreek's racial make-up to be consistent throughout the Village; and the Village's demands for multi-million dollar investment in the properties are purported requirements neither found in Chapter 18, Article IIII of the Ordinance or Chapter 22-468 of the Ordinance; nor are they proper bases for denying a business license under Chapter 18, Article IIII of the Ordinance or Chapter 22-468 of the Ordinance.  In fact, certain of that criteria is illegal based on the Village's own Ordinance, Chapter 22-472.

**ANSWER:**    The Defendants deny that those demands referenced in  Paragraph Thirty Six (36.) of Plaintiff's Complaint were made.

15

37.     By way of another example, on March 24, 2006, a meeting was held at the Village Hall.  The persons in attendance were: Kerestes; Kathy Fisher (Village Housing Inspector); Dinah Gonzales (an employee of Atlantic Management Corporation that manages Thorncreek III); and Patricia Clapper, Regional (Property Manager for Thorncreek III).

**ANSWER:**    The Defendants admit a meeting was held.

38.     At the meeting, Patricia Clapper asked Kerestes about the status of the Thorncreek entities' business license applications.  Kerestes explained that he was dissatisfied with David Clapper's (a principal of Thorncreek III and IIII) (alleged) failure to make improvements to the properties, citing examples such as kitchen upgrades, central air conditioning units, and new windows --- upgrades that are not required by the Ordinance for a business license to issue.

**ANSWER:**    The Defendant, Kerestes, told Clapper the application for management license was complete and was being passed on to the Village Manager.  Defendant admits that they were disappointed the improvements were not part of the plan of management. Defendants admit they are not part of the ordinance which is not specifically identified by name or Section number.

39.     At the meeting, Kerestes again voiced "concerns" about Thorncreek.  Kerestes stated that the Village was concerned about Thorncreek's "racial make-up." Specifically, that David Clapper is a "slum lord"; and that while the 2000 census showed that the Village was "58% white, 39% black and the rest

mixed ethnic", in 2006 residents are "90% black and 10% white."  Kerestes
explained that this put a burden on Village services and the Village Police
Department, because of more drug problems and domestic complaints.
Kerestes also explained that this put a burden on the Village school system
because these black families "were not responsible for their children."
Kerestes advised that making the above improvements will improve the
perception of Thorncreek and draw a "better" clientele; and that the Village
Board of Trustees had expressed similar concerns about the racial changes in
the Village and Thorncreek.

**ANSWER:**    The Defendant, Kerestes, denies any statement that David Clapper was a
"slum landlord".   Defendant, Kerestes, did generally discuss the racial make-up of
community.  Defendant, Kerestes, admits the census figures referenced as to racial make-
up.   Defendant denies that he stated black families were "not responsible for their
families".   Defendant denies the remaining Allegations contained in  Paragraph Thirty
Nine (39.) of Plaintiff's Complaint.


40.    None of the above "improvements" cited by Kerestes and the Village Board
are required under Chapter 18, Article IIII of the Ordinance or Chapter 22-468
of the Ordinance before the Village Manager "shall" issue a business license.

**ANSWER:**    The Defendants admit that the improvements referenced previously in
Paragraph Thirty Eight (38.) are not part of the referenced Code Section.

41.     The alleged failure to make the above "improvements" cited by Kerestes and the Village Board is not a proper basis for the denial of a business license under Chapter 22-468.

**ANSWER:**    The Defendants admit that the improvements referenced previously in Paragraph Thirty Eight (37.) are not a basis for denial.

42.     There is no requirement under Chapter 18, Article IIII of the Ordinance or Chapter 22-468 of the Ordinance that the property owner improve the "black/white" ratio.

**ANSWER:**    The Defendants admit the Allegations as to Paragraph Forty Two (42.) of Plaintiff's Complaint, but further state that statement was never made by the Defendant.

43.     The Village's "concerns" over the racial make-up of Thorncreek is not a proper basis for denying Thorncreek III and Thorncreek Management a business license and the ability to operate.  Such criteria is, in fact, illegal.

**ANSWER:**    The Defendants object to the terminology "concerns", not knowing exactly what that term means.  They admit it is not a basis for denial of a license and ability to operate.

44.     Village Manager Mick and Ostenburg have consistently communicated to Thorncreek III and Thorncreek Management their concerns over the types of people to whom Thorncreek III and Thorncreek Management rents and Area H's "tenant profile"; and they consistently suggest ways for Thorncreek III

and Thorncreek Management to "upgrade" the tenant profile, making veiled threats that such upgrades are preconditions to obtaining a business license and acquiring other permits and variances.

**ANSWER:**    The Defendants object to the terminology "concerns" not knowing exactly what that terms means and deny the remaining Allegations contained in  Paragraph Forty Four (44.) of Plaintiff's Complaint.  "Concerns" also calls for a legal conclusion.

45.    As a precondition to obtaining a business license, the Village has demanded and required Thorncreek III and Thorncreek Management to collect and share Thorncreek's racial statistics (i.e., the Village wants to know how many African Americans Thorncreek has at the Lofts at Thorncreek).

**ANSWER:**    The Defendants admit that under Section 22-466 and through Section 22-472 of the Village Code requires statistical occupancy data as part of the compliance of the application process.

46.    The Village's aforementioned "concerns" are not proper factors under the Ordinance, Chapter 22-32.

**ANSWER:**    The Defendants object to the terminology "concerns" not knowing exactly what that term means in this Paragraph and, thus, is incapable of answering it and calls for a legal conclusion.

47.    The factors set forth in Chapter 22-32 are also unconstitutionally vague and vest inordinate and ambiguous discretion in the Village Manager.  The factors

do not give an individual of ordinary intelligence a reasonable opportunity to comply with the discretionary factors vested in the Manager; i.e., there is no notice of what the law requires.

**ANSWER:**    Without any specific sentence cited in this Paragraph other than previously mentioned Chapters 22-32 in total, Defendants deny the Allegations contained in Paragraph Forty Seven (47.) of Plaintiff's Complaint.  "Unconstitutionally vague" does call for a legal conclusion.


48.    Furthermore, Chapter 22-32 lacks explicit standards for its application, and impermissibly delegates basic policy matters to the Village Manager for resolution on an *ad hoc* and subjective basis, with dangers of arbitrary and discriminatory applications.  On information and belief, the Village, through Mick, has impermissibly relied on this section to deny Thorncreek III business licenses.

**ANSWER:**    The Defendants deny the Allegations contained in  Paragraph Forty Eight (48.) of Plaintiff's Complaint.


49.    The Village, through its agents, and functionally through Mick and McGann, continue to deny Thorncreek III a business license to operate Area H.

**ANSWER:**    Defendants admit the Allegations contained in  Paragraph Forty Nine (489) of Plaintiff's Complaint, since Plaintiff has not complied with the Village's Code of Ordinances.

50.    The Village's actions in denying business licenses are arbitrary, irrational, and racially motivated.

**ANSWER:**    The Defendants deny the Allegations contained in  Paragraph Fifty (50.) of Plaintiff's Complaint.

51.    Thorncreek III and Thorncreek Management has a vested right and a legitimate entitlement to operate Area H; and has a vested right and legitimate entitlement in a business license because Thorncreek III and Thorncreek Management have, at all relative times hereto, complied with the Ordinance procedures for the issuance of a license.

**ANSWER:**    The Defendants deny that Thorncreek has compiled with the Village's ordinance procedures for issuance of a license.

52.    The issuance of a business license is non-discretionary when the provisions of the Ordinance have been met.

**ANSWER:**    The Defendants admit the issuance of a business license can be a non-discretionary act, but deny that Thorncreek has met the provisions in the ordinance.

53.    On information and belief, the Village Board and Ostenburg have instructed Mick and McGann and/or predecessor Village Clerks not to issue Thorncreek III business licenses.

**ANSWER:**     Defendants deny the Allegations contained in  Paragraph Fifty Three (53.)
of Plaintiff's Complaint.


54.     The demands the Village and its agents have imposed on Thorncreek III and
Thorncreek Management are not required on similarly situated owners of
multi-dwelling units.

**ANSWER:**     Defendants deny the Allegations contained in  Paragraph Fifty Four (54.)
of Plaintiff's Complaint.


55.     Other similarly situated property owners in the Village are not and have not
been required to improve the "racial make-up" and/or the "black/white" ratio
of its tenants outlined above as a precondition to acquiring a business license
and to operate their businesses.

**ANSWER:**     Defendants deny that the Village has required any racial make-up or
black/white ratio in order to issue a license.


56.     Other similarly situated property owners in the Village are not and have not
been required to increase rent as a precondition to acquiring a business license
and to operate their businesses.

**ANSWER:**     Defendants deny the Village has ever required Thorncreek to raise rents as
a pre-condition to a business license.

57.     The Village's efforts, through its agents, by denying Thorncreek III business licenses is part of a larger plan, policy, custom, conspiracy to drive Thorncreek III and Thorncreek Management and its African American and Hispanic tenants out of the Village.

**ANSWER:**    Defendants deny the Allegations contained in  Paragraph Fifty Seven (57.) of Plaintiff's Complaint.


## DENIAL OF INSPECTIONS AND CERTIFICATES OF OCCUPANCY

58.     Under the Ordinance, Chapter 18-255, each time a tenant moves out of a dwelling unit, the Village requires a new certificate of occupancy to issue before a new tenant may move in.  A certificate of occupancy will not issue until the owner applies for and pays an application fee, and the Village conducts and inspection of the dwelling unit.

**ANSWER:**    Defendants admit the Allegations contained in  Paragraph Fifty Eight (58.) of Plaintiff's Complaint.


59.     Under Ordinance Section 18-255(b):

A certificate of occupancy ***shall be issued by the village building commissioner*** upon a determination that there are no violations of any applicable section of this Code in the interior and exterior of the dwelling unit after inspection has been made in accordance with the following:

(1)  The building commissioner or his designated department employee inspects the interior and exterior of the dwelling unit to ascertain only visible Code violations. . . . (emphasis added)

**ANSWER:**    Defendants admit the Allegations contained in  Paragraph Fifty Nine (59.) of Plaintiff's Complaint.

60.    The Village has intentionally denied the Lofts at Thorncreek inspections and/or refuses to give the Lofts at Thorncreek sufficient inspections to keep pace with tenant turnover.  The Village does this in order to frustrate Thorncreek III and Thorncreek Management's day to day business operations and prospective tenants.

**ANSWER:**    Defendants deny the Allegations contained in  Paragraph Sixty (60.) of Plaintiff's Complaint.

61.    Over the last year, the Village has refused to perform any inspections of Area G (owned by Thorncreek II, another area in the Lofts at Thorncreek); and prior thereto, the Village gave limited inspections for Area H and Area G.

**ANSWER:**    Defendants deny the Allegations contained in  Paragraph Sixty One (61.) of Plaintiff's Complaint.  The Village will do inspections if applied for and has done so in the past.

62.    With respect to the limited inspections the Village does conduct (which are frequently cancelled at the last minute and "rescheduled"), Village inspectors nit-pick and are overly critical (e.g., requiring tree branch trimming) or overbroad (the observance of some flaking paint leads to a demand to re-paint the whole unit), and go beyond the scope of a proper inspection.  The end

result is, more often than not, the Village inspectors fail the inspected unit, and the building commissioner, Kerestes, denies a certificate of occupancy.

**ANSWER:**    Defendants deny they cancelled any inspections, and deny the remaining Allegations contained in  Paragraph Sixty Two (62.) of Plaintiff's Complaint, except the Village will waive certain areas to be inspected if they have a management license. Village will require inspection of inside and outside areas per Village Code.  Defendants deny they "nit-pick" as referenced in this paragraph.

63.    Thereafter, Thorncreek III and Thorncreek Management will repair the alleged minor issues.  New inspections (which the Village systemically limits to the Lofts at Thorncreek only) are then required, at significant time, effort, and expense (including, at times, new application fees). Then at each re-inspection, the Village inspectors again nit-pick and find new alleged problems with the unit, again driving up costs for repair and requiring re-inspections.    All the while, the units cannot be rented, because they lack certificates of occupancy, and prospective tenants, otherwise ready, willing, able, and waiting to move into Area H, leave Thorncreek for other housing, all at significant cost and lost profits to Thorncreek III and Thorncreek Management.

**ANSWER:**    Defendants admit a certain minimum amount of repairs are required to be done by Plaintiff.  Defendants deny new inspections are only limited to lofts at Thorncreek and deny any "nit-picking".  The Village will charge for a re-inspection fee if

a condition is not abated upon initial inspection.  Defendants deny it finds new violations when the Village performs inspections.

64.    The "repairs" the Village requires of Thorncreek III are not maintenance, have nothing to do with safety, and have no support in the Ordinance.

**ANSWER:**    Defendants deny the Allegations contained in  Paragraph Sixty Four (64.) of Plaintiff's Complaint.

65.    The repairs the Village requires of Thorncreek III and Thorncreek Management are not required on similarly situated owners or managers of multi-dwelling units.

**ANSWER:**    Defendants deny the Allegations contained in  Paragraph Sixty Five (65.) of Plaintiff's Complaint.

66.    At all times relative hereto, Thorncreek III and Thorncreek Management have properly filed applications for inspections and paid the requisite fees.

**ANSWER:**    Defendants deny they have done so at all times, as referenced in Paragraph Sixty Six (66.) of Plaintiff's Complaint.

67.    At all time relative hereto, prospective units to be inspected in Area H have no applicable Ordinance violations.

**ANSWER:**    Defendants deny the Allegations contained in   Paragraph Sixty Seven (67.) of Plaintiff's Complaint.

68.     Thorncreek III and Thorncreek Management have a property right and interest in the Area H units and in certificates of occupancy.

**ANSWER:**     Defendants neither admit nor deny they may have a property and interest, but demand strict proof thereof, as alleged in Paragraph Sixty Eight (68.) of Plaintiff's Complaint.

69.     The issuance of a certificate of occupancy is non-discretionary when the Ordinance terms have been met.

**ANSWER:**     Defendants admit this statement is generally true.

70.     On information and belief, the Village Board and Ostenburg have instructed Kerestes and his subordinates to fail Thorncreek III and Thorncreek Management's inspections and deny Thorncreek III and Thorncreek Management certificates of occupancy.

**ANSWER:**     Defendants deny the Allegations contained in  Paragraph Seventy (70.) of Plaintiff's Complaint.

71.     Kerestes and/or his superiors (i.e., Ostenburg, Mick, and/or the Village Board of Trustees) are responsible for establishing final government policy with respect to issuing a certificate of occupancy.

**ANSWER:**    Defendants deny any appointed officers are responsible for final government policy, but admit elected officials would be policymakers, and standards for certificates of occupancy are set forth in the Village's Code of Ordinances.

72.    The Village, through its inspectors, and at the direction of Kerestes, Mick, the Board, and/or Ostenburg, have wrongfully denied Thorncreek III and Thorncreek Management certificates of occupancy.

**ANSWER:**    Defendants deny the Allegations contained in  Paragraph Seventy Two (72.) of Plaintiff's Complaint.

73.    The Village's actions in denying certificates of occupancy are arbitrary, irrational, and racially motivated.

**ANSWER:**    Defendants deny the Allegations contained in  Paragraph Seventy Three (73.) of Plaintiff's Complaint.

74.    Thorncreek III and Thorncreek Management have and have had a list of potential tenants who cannot move into Area H because of the Village and its agents' aforementioned actions.  These prospective tenants inevitably move on to find other housing, resulting in significant losses to Thorncreek III and Thorncreek Management.

**ANSWER:**    The Defendants have knowledge insufficient to form a belief as to the truth or falsity of the Allegations contained in  Paragraph Seventy Four (74.) of Plaintiff's Complaint, and, therefore, neither admit nor deny same, but demand strict proof thereof.

75.     The Village's efforts, through its agents, in failing inspections and denying certificates of occupancy are part of a larger plan, policy, custom, conspiracy to drive Thorncreek III and Thorncreek Management and its African American and Hispanic tenants out of the Village and to discourage prospective African American and Hispanic tenants.

**ANSWER:**    Defendants deny the Allegations contained in  Paragraph Seventy Five (75.) of Plaintiff's Complaint.


## DENIAL OF SIGN PERMITS

76.     The Village Ordinance requires one who seeks to erect signage to apply for and obtain a permit.  Chapter 118-302.

**ANSWER:**    Defendants admit the Allegations contained in  Paragraph Seventy Six (76.) of Plaintiff's Complaint.


77.     Mick and/or his superiors (i.e., Ostenburg and/or the Village Board of Trustees) are responsible for establishing final government policy with respect to issuing permits.

**ANSWER:**    Defendants deny Village Manager Mick has authority to establish final policymaking decisions.  Defendants admit the Village Board and Village President have authority to establish policy.  Standards for permits are contained in the Village's Code of Ordinances.

78.     At all times relative hereto, Thorncreek III and Thorncreek Management have properly applied for signage to be used to promote renting at the Lofts at Thorncreek.  The Village, however, through its agents, has intentionally and arbitrarily denied Thorncreek III and Thorncreek Management's applications or rejected them outright (i.e., the Village will not accept them).

**ANSWER:**    Defendants admit Thorncreek III has applied for signage, but until resolution of pending citations and issuance of conditional use permits, the three (3) signs will not be approved.

79.     The inability to use signs as a marketing tool has substantially affected Thorncreek III and Thorncreek Management's ability to market to renters and conduct business.

**ANSWER:**    Defendants have knowledge insufficient to form a belief as to the truth or falsity of the Allegations contained in  Paragraph Seventy Nine (79.) of Plaintiff's Complaint, and, therefore, neither admit nor deny same, but demand strict proof thereof.

80.     Employees and agents of the Village have physically removed Thorncreek III and Thorncreek Management's signage.

**ANSWER:**    Defendants admit the Allegations contained in  Paragraph Eighty (80.) of Plaintiff's Complaint, due to illegal installation of signs.

81.    Thorncreek III and Thorncreek Management have a property right and interest in the Area H units, in the sign permits, and in the freedom to market and rent the property unobstructed by the irrational acts of the Village and its agents.

**ANSWER:**    Defendants neither admit nor deny a property right and interest in Area G and demand strict proof thereof, but deny the remaining Allegations contained in Paragraph Eighty One (81.) of Plaintiff's Complaint.

82.    The issuance of a sign permit is non-discretionary when the Ordinance terms have been met.

**ANSWER:**    **D**efendants admit that this statement is generally true.

83.    The Village's refusal to approve Thorncreek's applications for signage is arbitrary, irrational, and racially motivated.

**ANSWER:**    Defendants deny the Allegations contained in  Paragraph Eighty Three (83.) of Plaintiff's Complaint.

84.    The refusal to accept Thorncreek III and Thorncreek Management's applications for permits and to approve Thorncreek III and Thorncreek Management's applications for permits are actions the Village has not taken with respect to similarly situated owners of multi-dwelling units.

**ANSWER:**    Defendants deny the Allegations contained in  Paragraph Eighty Four (84.) of Plaintiff's Complaint.

85.    The Village's efforts in denying Thorncreek III the right to erect signage is part of a larger plan, policy, custom, conspiracy to drive Thorncreek III and Thorncreek Management out of the Village and discourage prospective African American and Hispanic renters.

**ANSWER:**    Defendants deny the Allegations contained in  Paragraph Eighty Five (85.) of Plaintiff's Complaint.


**DENIAL OF VARIANCE**

86.    Thorncreek III and Thorncreek Management have properly applied for a variance in order to have its business/leasing office in an Area H townhome. Although the business/leasing office fits within the Ordinance criteria as an "accessory use," the Village has unlawfully refused to allow the business/leasing office to operate in Area H as an accessory use.  Thorncreek III and Thorncreek Management, at all times relative hereto, submitted the proper paperwork to apply for a variance.

**ANSWER:**    Defendants deny Thorncreek applied for a variance, but admit they did apply for a conditional use permit.  Defendants neither admit nor deny it is an accessory use to the property, and demand strict proof thereof, but further state that certain Ordinance requirements need to be satisfied.


87.    Ostenburg and/or the Village Board of Trustees are responsible for establishing final government policy with respect to issuing an Ordinance variance.

32

**ANSWER:**    Defendants admit the Allegations contained in  Paragraph Eighty Seven (87.) of Plaintiff's Complaint, and standards for a variance are set forth in the Village's Code of Ordinances.

88.    For several months, the Village refused to even accept Thorncreek III and Thorncreek Management's application, wrongfully stating that Thorncreek III and Thorncreek Management's paperwork was incomplete.

**ANSWER:**    Defendants deny the application refusal was without justification since the Plaintiff's submitted paperwork was incomplete.

89.    On information and belief, other apartment complexes in the Village have moved their leasing office without permission of the Village.

**ANSWER:**    Defendants deny the Allegations contained in  Paragraph Eighty Nine (89.) of Plaintiff's Complaint.

90.    Representatives of Thorncreek III and Thorncreek Management subsequently met with Village representatives and inquired as to what information the Village wanted.  Village representatives advised what Thorncreek III and Thorncreek Management needed to submit for a complete application. Thorncreek III and Thorncreek Management then submitted the information, but the Village still refused to consider Thorncreek III and Thorncreek Management's application.

**ANSWER:**    Defendants admit a meeting with Thorncreek, but Plaintiff submitted incomplete information.    Defendants deny the information submitted was adequate. Defendants deny the Village refused its application since this information, if completed properly, would go to the Plan Commission for public hearing.

91.    Eventually, after months of delay, the Village Planning Commission conditionally approved Thorncreek III and Thorncreek Management's application. The conditions were several irrational requirements for unrelated upgrades that have no support in the Ordinance. The Planning Commission also conditioned the approval on Village Board of Trustees' ultimate approval and review.

**ANSWER:**    Defendants admit there was a Plan Commission recommendation upon public hearing and said recommendation is required to be reviewed for approval or denial pursuant to the Village's Code of Ordinances.

92.    After Thorncreek III and Thorncreek Management met the Planning Commission's recommended conditions (with the exception of the requirement to install a ramp --- because the Village denied the permit to build it), the Village Board of Trustees still refuses to vote on Thorncreek III's application. The Village Board of Trustees and Ostenburg then made material misrepresentations to third-parties, the public, and the media advising that the information Thorncreek III and Thorncreek Management submitted was false.

**ANSWER:**   Defendants admit the permit was not issued, but the Village cannot approve a building permit until a conditional use permit is approved by the Village Board.  Defendants deny any material misrepresentations as referenced in this Paragraph.

93.    The Village has wrongfully ticketed and fined and continues to ticket and fine Thorncreek III and Thorncreek Management for using a business/leasing office.

**ANSWER:**   Defendants deny their citations are wrongfully issued and were issued prior to their application.  Defendants have not fined them, but the adjudicator has done so.

94.    The Village's refusal to accept Thorncreek III's applications for variance is an action the Village has not taken with respect to similarly situated owners of multi-dwelling units.

**ANSWER:**   Defendants deny the Allegations contained in  Paragraph Ninety Four (94.) of Plaintiff's Complaint.

95.    The Village Board of Trustees' refusal to docket, consider, and vote on applications for variance is an action the Village has not taken with respect to similarly situated owners of multi-dwelling units.

**ANSWER:**   The Defendants have knowledge insufficient to form a belief as to the truth or falsity of the Allegations contained in  Paragraph Ninety Five (95.) of Plaintiff's Complaint, and, therefore, neither admit nor deny same, but demand strict proof thereof.

96.     The Village Board of Trustees public defamation of Thorncreek III and Thorncreek Management is an action the Village has not taken with respect to similarly situated owners of multi-dwelling units.

**ANSWER:**    Defendants deny any public defamation as alleged in Paragraph Ninety Six (96.) of Plaintiff's Complaint, and deny all remaining Allegations in that Paragraph.

97.     Other similarly situated property owners in the Village are not and have not been required to make the improvements and upgrades outlined above as a precondition to acquiring a variance.

**ANSWER:**    Defendants deny the Allegations contained in  Paragraph Ninety Seven (97.) of Plaintiff's Complaint.

98.     The Village's efforts in denying Thorncreek III and Thorncreek Management the right to conduct a business/leasing office within the Lofts at Thorncreek and defaming Thorncreek III and Thorncreek Management is part of a larger plan, policy, custom, conspiracy to drive Thorncreek III and Thorncreek Management out of the Village and discourage prospective African American and Hispanic renters.

**ANSWER:**    Defendants deny the Allegations contained in  Paragraph Ninety Eight (98.) of Plaintiff's Complaint.

**TARGETED DISCRIMINATION: VILLAGE PASSAGE OF TWO ORDINANCES**

99.    In response to Thorncreek III and Thorncreek Management's refusal to adhere to the Village's unlawful and illegal demands, the Village recently passed two ordinances aimed directly at Thorncreek III and Thorncreek Management and its African American and Hispanic residents.

**ANSWER:**    Defendants deny the Allegations contained in  Paragraph Ninety Nine (99.) of Plaintiff's Complaint.

100.    Ostenburg and/or the Village Board of Trustees are responsible for establishing final government policy with respect to amending and/or supplementing the Ordinance.

**ANSWER:**    Defendants admit the Allegations contained in  Paragraph One Hundred (100.) of Plaintiff's Complaint.

101.    The first is the "Crime Free Housing Ordinance," ("CFHO") adopted in October 2007.  The Village has stated that the goal was "to address and prevent problematic rental homes from affecting the quality of life in the Village."  In reality, the CFHO was adopted to discourage and drive out lower income and minority residents from Thorncreek III and the Village at large.

**ANSWER:**    Defendants deny the Allegations contained in  Paragraph One Hundred One (101.) of Plaintiff's Complaint.

102.    The CFHO makes it unlawful for a manager or owner of residential property to allow someone in violation of the CFHO to rent property to occupy a dwelling unit or to rent property prior to a "Public Safety/Crime Prevention inspection."

**ANSWER:**    Defendants admit the Allegations contained in  Paragraph One Hundred Two (102.) of Plaintiff's Complaint.

103.    Continued renting is subject to random "Public Safety/Crime Prevention inspections" without provision for probable cause.  The CFHO invites the Village to exact an undefined amount of retribution on a property owner and subjects alleged offending tenants to eviction.

**ANSWER:**    Defendants deny random or arbitrary inspections.  The Defendants deny the remaining Allegations contained in  Paragraph One Hundred Three (103.) of Plaintiff's Complaint.

104.    The CFHO is unconstitutionally vague and vests inordinate and ambiguous discretion in the Village without published standards of the activities that are proscribed.  The unpublished standards do not give an individual of ordinary intelligence a reasonable opportunity to comply with the CFHO; i.e., there is no notice of what the law requires.

**ANSWER:**    Defendants deny the Allegations contained in  Paragraph One Hundred Four (104.) of Plaintiff's Complaint.

105.    Furthermore, the CFHO lacks explicit standards for its application, and impermissibly delegates basic policy matters to the Village police or other unknown agents of the Village for resolution on an *ad hoc* and subjective basis, with dangers of arbitrary and discriminatory applications.

**ANSWER:**    Defendants deny the Allegations contained in  Paragraph One Hundred Five (105.) of Plaintiff's Complaint.

106.    The Village, through the Board of Trustees and Ostenburg, passed the CFHO for the sole purpose of driving out lower income and minority residents from Thorncreek III and Thorncreek Management and the Village at large, and to drive out Thorncreek III and Thorncreek Management from the Village entirely.

**ANSWER:**    Defendants deny the Allegations contained in  Paragraph One Hundred Six (106.) of Plaintiff's Complaint.

107.    The Village's rationale for passing the CFHO is irrational, arbitrary, and unfairly targets Thorncreek III and Thorncreek Management and minority residents.

**ANSWER:**    Defendants deny the Allegations contained in  Paragraph One Hundred Seven (107.) of Plaintiff's Complaint.

108.    The Village also recently passed an amendment to the Ordinance requiring new residential units to have not less than 100 ampere, three-wire electrical service.  Chapter 18-33.

**ANSWER:**    Defendants admit the passing of this Ordinance, but deny it is for new housing.  It applies to all housing.


109.    The Village will not issue certificates of occupancy for a turned over unit unless the unit is upgraded to comply with Chapter 18-33.

**ANSWER:**    Defendants admit that Paragraph One Hundred Nine (109.) of Plaintiff's Complaint refers to a change of occupancy.


110.    The issue with the upgrades has nothing to do with safety, primarily because the Village only requires the upgrades upon turnover of a unit.

**ANSWER:**    Defendants deny the Allegations contained in  Paragraph One Hundred Ten (110.) of Plaintiff's Complaint.


111.    Few or no other property owners in the Village are affected by Chapter 18-33. The Lofts at Thorncreek were built in the earlier part of the Twentieth Century as part of a U.S. Government housing project for servicemen returning from World War II.  While the electrical at the Lofts at Thorncreek is safe and well-maintained, it is not 100 ampere, three-wire service.

**ANSWER:**    Defendants deny the Allegations contained in  Paragraph One Hundred Eleven (111.) of Plaintiff's Complaint.

112.    The changes required by the Village would cost Thorncreek hundreds of thousands of dollars.

**ANSWER:**    The Defendants have knowledge insufficient to form a belief as to the truth or falsity of the Allegations contained in  Paragraph One Hundred Twelve (112.) of Plaintiff's Complaint, and, therefore, neither admit nor deny same, but demand strict proof thereof.

113.    The Village, through the Board of Trustees and Ostenburg, amended the electrical code to impose substantial costs on the Thorncreek entities only, with the hope that it would require Thorncreek to increase rent, and drive out lower-income, African American and Hispanic residents from Thorncreek III and the Village at large, and to drive out Thorncreek III from the Village entirely.

**ANSWER:**    Defendants admit the Code was amended, but deny all remaining Allegations contained in   Paragraph One Hundred Thirteen (113.) of Plaintiff's Complaint.

114.    The Village's rationale for amending the electrical code is irrational, arbitrary, and unfairly targets Thorncreek III and Thorncreek Management and minority residents.

**ANSWER:**    Defendants deny the Allegations contained in  Paragraph One Hundred Fourteen (114.) of Plaintiff's Complaint.

    115.    The Village's efforts in passing the CFHO and amending the electrical ordinance is part of a larger plan, policy, custom, conspiracy to drive Thorncreek III and Thorncreek Management out of the Village and discourage prospective African American and Hispanic renters.

**ANSWER:**    Defendants deny the Allegations contained in  Paragraph One Hundred Fifteen (115.) of Plaintiff's Complaint.

OTHER ISSUES

    116.    On information and belief, the Village has instigated residents at Thorncreek to start an unfounded class action lawsuit against Thorncreek II, another Thorncreek entity.

**ANSWER:**    The Defendants have knowledge insufficient to form a belief as to the truth or falsity of the Allegations contained in  Paragraph One Hundred Sixteen (116.) of Plaintiff's Complaint, and, therefore, neither admit nor deny same, but demand strict proof thereof.

    117.    The Village police target and harass Thorncreek residents based on their race, will not properly patrol and make service calls to Area H, and do not enforce

the law at the Lofts at Thorncreek, refusing to make arrests or otherwise warn those engaging in suspicious activity.

**ANSWER:**    Defendants deny the Allegations contained in  Paragraph One Hundred Seventeen (117.) of Plaintiff's Complaint.

118.    The Village police and fire departments have harassed Thorncreek III by alleging that Thorncreek had alleged defective carbon monoxide detectors. The harassment occurred even though the Village police and fire departments knew the issue was with the manufacturer, not Thorncreek III.

**ANSWER:**    Defendants deny the Allegations contained in  Paragraph One Hundred Eighteen (118.) of Plaintiff's Complaint.

119.    The Village, through its authorized agents, makes constant demands on Thorncreek to upgrade the Thorncreek III property; but when Thorncreek III and Thorncreek Management try to upgrade Area H, the Village tickets Thorncreek III and Thorncreek Management because of lack of permits --- permits the Village will not approve.

**ANSWER:**    Defendants deny the Allegations contained in  Paragraph One Hundred Nineteen (119.) of Plaintiff's Complaint, but further state that the Village has issued permits for certain work.

120.    The Village, through its authorized agents, also harasses Thorncreek by consistently targeting Thorncreek management for tickets for other alleged

Ordinance violations, targeted discrimination that the Village does not impose on others.

**ANSWER:**   Defendants deny the Allegations contained in  Paragraph One Hundred Twenty (120.) of Plaintiff's Complaint.

121.   All of the aforementioned actions by the Village and its agents have effectively destroyed Thorncreek Management's investment and assets in Area H, and have caused Thorncreek III and Thorncreek Management's lenders to threaten and/or call loans and security, including, possibly, Thorncreek III and Thorncreek Management's right to sue in this and other actions.  Thorncreek Management therefore has standing to assert claims on its own behalf against the Village and its agents.

**ANSWER:**   Defendants deny the Allegations contained in  Paragraph One Hundred Twenty One (121.) of Plaintiff's Complaint.

122.   Thorncreek Management's injuries are separate, distinct, and not derivative of Thorncreek III's injuries.

**ANSWER:**   The Defendants have knowledge insufficient to form a belief as to the truth or falsity of the Allegations contained in  Paragraph One Hundred Twenty Two (122.) of Plaintiff's Complaint, and, therefore, neither admit nor deny same, but demand strict proof thereof.

123.    Although Thorncreek III has been harmed by the actions of the Village and its agents, Thorncreek Management has a direct and personal interest in this cause of action.

**ANSWER:**    Defendants deny any harm, and neither admit nor deny the remaining Allegations contained in Paragraph One Hundred Twenty Three (123.) of Plaintiff's Complaint, but demand strict proof thereof.

124.    Thorncreek Management has a direct and personal interest in this cause of action.  Should the bank foreclose on the property and/or take possession of the property (as secured creditor), Thorncreek Management stands to lose everything.

**ANSWER:**    The Defendants have knowledge insufficient to form a belief as to the truth or falsity of the Allegations contained in  Paragraph One Hundred Twenty Four (124.) of Plaintiff's Complaint, and, therefore, neither admit nor deny same, but demand strict proof thereof.

125.    Thorncreek Management's claims against the Defendants are entitled to be redressed by Thorncreek Management directly, and not through an investment (which is subject to take over by the bank).

**ANSWER:**    The Defendants have knowledge insufficient to form a belief as to the truth or falsity of the Allegations contained in  Paragraph One Hundred Twenty Five (125.) of Plaintiff's Complaint, and, therefore, neither admit nor deny same, but demand strict proof thereof.

<u>**DAMAGES**</u>

126.     The denial of business licenses, permits, variances, certificates of occupancy, the denial of Thorncreek III and Thorncreek Management's rights to operate its business, the defamation, the targeted discrimination, and the acts and omissions described above have proximately caused Plaintiffs substantial damages, including, but not limited to:

(i)     loss of the beneficial use of the property;

(ii)     lost profits;

(iii)     lost rent;

(iv)     lost business opportunities;

(v)     driving down the value of Area H;

(vi)     frustrated Thorncreek III and Thorncreek Management's ability to attract and market to new tenants and retain existing ones;

(vii)     lost goodwill;

(viii)     the ability to pay its mortgage;

(ix)     hurt Thorncreek III and Thorncreek Management's standing with its lender (Washington Mutual);

(x)     caused a default with Washington Mutual;

(xi)     damaged Thorncreek III and Thorncreek Management and its investors' and managing members' credit;

(xii)     inhibited raising money from new investors;

(xiii)     pay taxes;

(xiv)  pay vendors and do business with vendors;

(xv)  make capital and physical improvements to the property;

(xvi)  caused delinquencies and vacancies;

(xvii)  negative publicity;

(xviii)  and all other incidental and consequential damages.

**ANSWER:**    Defendants deny that the Plaintiff is entitled to any relief.  The Defendants

move to dismiss Plaintiff's Complaint, specifically subparagraphs (i) through (xviii).


## COUNT I --- DENIAL OF THORNCREEK III'S RIGHTS TO EQUAL PROTECTION OF THE LAWS IN VIOLATION OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION:

### 42 U.S.C. § 1983

127.    Plaintiffs incorporate Paragraphs 1-126 as if each such Paragraph were re-
stated in its entirety.

**ANSWER:**    Defendants incorporate their responses to Paragraphs One (1.) through

One Hundred Twenty Six (126.) as their answer to Paragraph One Hundred Twenty

Seven (127.) of Plaintiff's Complaint, and incorporate those responses by reference.

128.    At all times relevant hereto, the conduct of the Village and all Defendants was
subject to 42 U.S.C. §§ 1983, 1985, 1986, and 1988.

**ANSWER:**    Defendants deny the Allegations contained in  Paragraph One Hundred

Twenty Eight (128.) of Plaintiff's Complaint.


129.    The Village's agents and the Defendants are employees and/or executives of
the Village and at all relevant times hereto were acting under color of state

law and within the scope of each of their respective vested, actual, and/or apparent authority.

**ANSWER:**    Defendants deny the Allegations contained in  Paragraph One Hundred Twenty Nine (129.) of Plaintiff's Complaint.

130.    Ostenburg and/or Kerestes and/or Mick and/or Trustees of the Board and/or other Village executives, employees, or agents have created an unconstitutional policy and/or custom of the Village to impose the requirements set forth *supra*, which are separate, distinct, and different from those legislatively enacted, provided, and expressed in the Ordinance, before business licenses, permits, certificates of occupancy, and variances will issue to Thorncreek III.

**ANSWER:**    # Defendants deny the Allegations contained in  Paragraph One Hundred Thirty (130.) of Plaintiff's Complaint.

131.    The Village, through its executive officers and/or Board of Trustees, had knowledge and/or acquiesced in the policy and/or custom of the Village imposing requirements separate, distinct, and different from those legislatively enacted, provided, and expressed in the Ordinance before business licenses, permits, certificates of occupancy, and variances would issue to Thorncreek III.

**ANSWER:**    Defendants deny the Allegations contained in  Paragraph One Hundred Thirty One (131.) of Plaintiff's Complaint.

132.    Ostenburg and/or Kerestes and/or Mick and/or Trustees of the Board and/or other Village executives, employees, or agents have created an unconstitutional policy and/or custom of the Village to discourage African-American and Hispanic residents from the Lofts at Thorncreek and/or the Village at large.

**ANSWER:**    Defendants deny the Allegations contained in  Paragraph One Hundred Thirty Two (132.) of Plaintiff's Complaint.

133.     Ostenburg and/or Kerestes and/or Mick and/or Trustees of the Board and/or other Village executives, employees, or agents have created an unconstitutional policy and/or custom of the Village to pass legislation targeted at Thorncreek III and Thorncreek Management.

**ANSWER:**    Defendants deny the Allegations contained in  Paragraph One Hundred Thirty Three (133.) of Plaintiff's Complaint.

134.    The Village, through its executive officers and/or Board of Trustees, had knowledge and/or acquiesced in the policy and/or custom of discouraging African-American and Hispanic residents from the Lofts at Thorncreek and/or the Village at large.

**ANSWER:**    Defendants deny the Allegations contained in  Paragraph One Hundred Thirty Four (134.) of Plaintiff's Complaint.

135.    The Village, through its executive officers and/or Board of Trustees, had knowledge and/or acquiesced in the policy and/or custom of the Village to pass legislation targeted at Thorncreek III and Thorncreek Management.

**ANSWER:**    Defendants deny the Allegations contained in  Paragraph One Hundred Thirty Five (135.) of Plaintiff's Complaint.

136.    Ostenburg and/or Kerestes and/or Mick and/or Trustees of the Board and/or other Village executives, employees, or agents have collectively conspired to impose legislative requirements separate, distinct, and different from those provided by the Ordinance before business licenses, permits, certificates of occupancy, and variances will issue to Thorncreek III.

**ANSWER:**    Defendants deny the Allegations contained in  Paragraph One Hundred Thirty Six (136.) of Plaintiff's Complaint.

137.    Imposing requirements separate, distinct, and different from those legislatively and expressly provided by the Ordinance before business licenses, permits, certificates of occupancy, and variances will issue to Thorncreek III and Thorncreek Management, but not applying the same requirements imposed on Thorncreek III and Thorncreek Management against other similarly situated property owners/renters, is not a permissible or legitimate government objective.

**ANSWER:**    Defendants deny the Allegations contained in  Paragraph One Hundred Thirty Seven (137.) of Plaintiff's Complaint.

138.    Discouraging African-American and Hispanic residents from the Lofts at Thorncreek and/or the Village at large and/or improving the "black/white" ratio is not a permissible or legitimate government objective.  It is illegal.

**ANSWER:**    Defendants deny the beginning Allegations contained in  Paragraph One Hundred Thirty Eight (138.) of Plaintiff's Complaint, and as to the remaining Allegations those call for a legal conclusion.

139.    On information and belief, other similarly situated property owners in the Village, as a precondition to attaining Village business licenses, permits, certificates of occupancy, and variances have not been required to meet legislative criteria other than that which is provided in the Ordinance.

**ANSWER:**    Defendants deny the Allegations contained in  Paragraph One Hundred Thirty Nine (139.) of Plaintiff's Complaint.

140.    The Village, through Ostenburg and/or Kerestes and/or Mick and/or Trustees of the Board and/or other Village executives, employees, or agents, has treated Thorncreek III and Thorncreek Management different from other property owners/renters, disparate treatment which is irrational, arbitrary, and vindictive.

**ANSWER:**    Defendants deny the Allegations contained in  Paragraph One Hundred Forty (140.) of Plaintiff's Complaint.

141.    The Village is not applying the Ordinance in an equal manner to all residents of the Village.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Forty One (141.) of Plaintiff's Complaint.

142.    The Village's agents, including, but not limited to, Ostenburg and/or Kerestes and/or Mick and/or Trustees of the Board and/or other Village executives, employees, or agents knew or should have reasonably known that denying and/or conspiring to deny Thorncreek III and Thorncreek Management business licenses, permits, certificates of occupancy, and variances under the facts and circumstances described herein violated Thorncreek III and Thorncreek Management's equal protection rights and other established statutory and constitutional law.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Forty Two (142.) of Plaintiff's Complaint.

143.    A reasonable state actor, agent, or official would have known that denying Thorncreek III and Thorncreek Management business licenses, permits, certificates of occupancy, and variances under the facts and circumstances described herein violated Thorncreek III and Thorncreek Management's equal protection rights and other established statutory and constitutional law.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Forty Three (143.) of Plaintiff's Complaint.

144.   The above actions have proximately caused Thorncreek III and Thorncreek Management substantial damages including those set forth in Paragraph 124 herein.

**ANSWER:**   Defendants deny the Allegations contained in  Paragraph One Hundred Forty Four (144.) of Plaintiff's Complaint.


WHEREFORE, the Defendants  request Count I be dismissed.  Defendants deny Plaintiffs are entitled to any relief.


## COUNT II --- DENIAL OF THORNCREEK III'S RIGHTS TO PROCEDURAL AND SUBSTANTIVE DUE PROCESS IN VIOLATION OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION:

### 42 U.S.C. § 1983

145.   Plaintiffs incorporate Paragraphs 1-144 as if each such Paragraph were re-stated in its entirety.

**ANSWER:**   Defendants incorporate their responses to Paragraphs One (1.) through One Hundred Forty Four (144.) as their answer to Paragraph One Hundred Forty Five (145.) of Plaintiff's Complaint, and incorporate those responses by reference.


146.   At all times relevant hereto, the conduct of the Village and the Defendants were subject to 42 U.S.C. §§ 1983, 1985, 1986, and 1988.

**ANSWER:**   Defendants deny the Allegations contained in  Paragraph One Hundred Forty Six (146.) of Plaintiff's Complaint.

147.    The Village's agents and the Defendants are employees and/or executives of the Village and at all relevant times hereto were acting under color of state law and within the scope of each of their respective vested, actual, and/or apparent authority.

**ANSWER:**    Defendants deny the Allegations contained in  Paragraph One Hundred Forty Seven (147.) of Plaintiff's Complaint.


148.    Operating a business, business licenses, permits, certificates of occupancy, and variances are rights in which Thorncreek III and Thorncreek Management have property interests because Thorncreek III and Thorncreek Management, at all times relative hereto, complied with the Village Ordinance.

**ANSWER:**    Defendants neither admit nor deny there is a property interest, but demand strict proof thereof, but deny the remaining Allegations contained in  Paragraph One Hundred Forty Eight (148.) of Plaintiff's Complaint.  The terminology of "property interest" calls for a legal conclusion.


149.    The right to be free from targeted discrimination and selective enforcement from public bodies is a liberty interest secured by the U.S. Constitution.

**ANSWER:**    Defendants admit the Allegations contained in Paragraph One Hundred Forty Nine (149.) of Plaintiff's Complaint.  Defendants further add that without specific Sections or Codes cited, it calls for a legal conclusion.

150.    Under Village law, an applicant is entitled to business licenses, permits, certificates of occupancy, and variances if he/she/it satisfies the requirements set forth in the Ordinance.

**ANSWER:**    Defendants admit the Allegations contained in Paragraph One Hundred Fifty (150.) of Plaintiff's Complaint as generally correct.

151.    The issuance of business licenses, permits, certificates of occupancy, and variances is non-discretionary if the criteria in the Ordinance is satisfied.

**ANSWER:**    Defendants admit the Allegations contained in Paragraph One Hundred Fifty One (151.) of Plaintiff's Complaint as generally correct.

152.    Mick and McGann and/or predecessor Village Clerks have failed to issue Thorncreek III and Thorncreek Management business licenses, despite the fact that Thorncreek III and Thorncreek Management have complied with the criteria set forth the Ordinance.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Fifty Two (152.) of Plaintiff's Complaint.

153.    Kerestes has failed to issue Thorncreek III and Thorncreek Management certificates of occupancy, despite the fact that Thorncreek III and Thorncreek Management have complied with the criteria set forth the Ordinance.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Fifty Three (153.) of Plaintiff's Complaint.

154.    The Village Board of Trustees and/or Ostenburg and/or Mick have failed to approve Thorncreek III and Thorncreek Management's applications for permits and variances, despite the fact that Thorncreek III and Thorncreek Management have complied with the criteria set forth the Ordinance.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Fifty Four(154.) of Plaintiff's Complaint.

155.    The Village, the Board of Trustees, Ostenburg, Kerestes, Mick, and/or Village executives, employees, and/or agents, have deprived Thorncreek III and Thorncreek Management of property rights in violation of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Fifty Five (155.) of Plaintiff's Complaint.

156.    The Village, the Board of Trustees, and Ostenburg have deprived Thorncreek III and Thorncreek Management of liberty interests by passing legislation targeted against Thorncreek III and Thorncreek Management and selectively enforced on Thorncreek III and Thorncreek Management.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Fifty Six (156.) of Plaintiff's Complaint.

157.    The Village, through its agents, has deprived Thorncreek III and Thorncreek Management of liberty interests by selectively targeting Thorncreek III and Thorncreek Management for tickets and other unlawful harassment.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Fifty Seven (157.) of Plaintiff's Complaint.

158.    The Village's denial to Thorncreek III and Thorncreek Management, through the Board of Trustees, Ostenburg, Kerestes, Mick, and/or Village executives, employees, and/or agents, of business licenses, permits, certificates of occupancy, and variances amounts to deprivation of a property rights without procedural due process in violation of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Fifty Eight (158.) of Plaintiff's Complaint.

159.    The Village's denial to Thorncreek III and Thorncreek Management, through the Board of Trustees, Ostenburg, Kerestes, Mick, and/or Village executives, employees, and/or agents, of the right to be free from targeted and selected discrimination without procedural due process amounts to a violation of the Due Process Clause of Fourteenth Amendment of the U.S. Constitution.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Fifty Nine (159.) of Plaintiff's Complaint.

160.    There are no adequate post-deprivation remedies available to Thorncreek III and Thorncreek Management for the Village's failure to issue business licenses, permits, certificates of occupancy, and variances to Thorncreek III and Thorncreek Management.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Sixty (160.) of Plaintiff's Complaint.

161.    There are no adequate post-deprivation remedies available to Thorncreek III and Thorncreek Management for the Village's targeted and selected discrimination.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Sixty One (161.) of Plaintiff's Complaint.

162.    The Village's denial to Thorncreek III, through the Board of Trustees, Ostenburg, Kerestes, Mick, and/or Village executives, employees, and/or agents, of business licenses, permits, certificates of occupancy, and variances is arbitrary, irrational, and unreasonable bearing no substantial relationship to the public health, safety, or welfare and is therefore in violation of the substantive component of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Sixty Two (162.) of Plaintiff's Complaint.

163.    The Village's targeted and selected discrimination is arbitrary, irrational, and unreasonable bearing no substantial relationship to the public health, safety, or welfare and is therefore in violation of the substantive component of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Sixty Three (163.) of Plaintiff's Complaint.

164.    Ostenburg and/or Kerestes and/or Mick and/or Trustees of the Board and/or other Village executives, employees, or agents have created an unconstitutional policy and/or custom of the Village to deny Thorncreek III and Thorncreek Management of the aforementioned property rights, by imposing requirements which are separate, distinct, and different from those provided by the Ordinance.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Sixty Four (164.) of Plaintiff's Complaint.

165.    Ostenburg and/or Kerestes and/or Mick and/or Trustees of the Board and/or other Village executives, employees, or agents have created an unconstitutional policy and/or custom of the Village to deny Thorncreek III and Thorncreek Management of the aforementioned liberty rights, by targeting Thorncreek III and Thorncreek Management for selective discrimination.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Sixty Five (165.) of Plaintiff's Complaint.

166.    The Village, through the Board of Trustees, Ostenburg, Kerestes, Mick, and/or Village executives, employees, and/or agents, had knowledge and/or acquiesced in the policy and/or custom of denying Thorncreek III and Thorncreek Management the aforementioned property rights and liberty rights, by imposing requirements which are separate, distinct, and different from those legislatively enacted, provided, and expressed by the Ordinance, and by targeting Thorncreek III and Thorncreek Management for selective discrimination.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Sixty Six (166.) of Plaintiff's Complaint.

167.    The Village, through the Board of Trustees, Ostenburg, Kerestes, Mick, and/or Village executives, employees, and/or agents, knew or should have reasonably known that denying Thorncreek III and Thorncreek Management business licenses, permits, certificates of occupancy, and variances under the facts and circumstances described herein violated Thorncreek III and Thorncreek Management's due process rights and other established statutory and constitutional law.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Sixty Seven (167.) of Plaintiff's Complaint.

168.    The Village, through the Board of Trustees, Ostenburg, Kerestes, Mick, and/or Village executives, employees, and/or agents, knew or should have reasonably known that targeting Thorncreek III and Thorncreek Management for selective discrimination under the facts and circumstances described herein violated Thorncreek III and Thorncreek Management's due process rights and other established statutory and constitutional law.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Sixty Eight (168.) of Plaintiff's Complaint.

169.    A reasonable state actor, agent, or official would have known that denying Thorncreek III and Thorncreek Management property and liberty rights under the facts and circumstances described herein violated Thorncreek III and Thorncreek Management's due process rights and other established statutory and constitutional law.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Sixty Nine (169.) of Plaintiff's Complaint.

170.    The above actions have proximately caused Thorncreek III and Thorncreek Management substantial damages including those set forth in Paragraph 126 herein.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Seventy (170.) of Plaintiff's Complaint.

WHEREFORE, the Defendants request Count II be dismissed. Defendants deny Plaintiffs are entitled to any relief.

## COUNT III --- TAKING OF THORNCREEK III'S PROPERTY AND INVERSE CONDEMNATION IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION:

### 42 U.S.C. § 1983

### AND TAKING IN VIOLATION OF THE ILLINOIS CONSTITUTION

171.    Plaintiffs incorporate Paragraphs 1-170 as if each such Paragraph were re-stated in its entirety.

**ANSWER:**    Defendants incorporate their responses to Paragraphs One (1.) through One Hundred Seventy (170.) as their answer to Paragraph One Hundred Seventy One (171.) of Plaintiff's Complaint, and incorporate those responses by reference.

172.    At all times relevant hereto, the conduct of the Village and the Defendants were subject to 42 U.S.C. §§ 1983, 1985, 1986, and 1988.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Seventy Two (172.) of Plaintiff's Complaint.

173.    The Village's agents and the Defendants are employees and/or executives of the Village and at all relevant times hereto were acting under color of state law and within the scope of each of their respective vested, actual, and/or apparent authority.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Seventy Three (173.) of Plaintiff's Complaint.

174.    The Village's denial, through the Board of Trustees, Ostenburg, Kerestes, Mick, and/or Village executives, employees, and/or agents, of business licenses, permits, certificates of occupancy, variances, making demands (upgrades, changing the racial make-up, etc.) not found in the Ordinance (and some which violate local, state, and federal law) and by passing laws targeted at the Lofts at Thorncreek only, has resulted in a taking of Area H, because the denial means that, under the Ordinance, Thorncreek III and Thorncreek Management cannot legally operate in the Village, cannot rent housing, cannot market the property, and cannot comply with local, state, and federal discrimination laws, thereby denying Thorncreek III of all beneficial and productive use of Area H.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Seventy Four (174.) of Plaintiff's Complaint.

175.    The Village, through the Board of Trustees, Ostenburg, Kerestes, Mick, and/or Village executives, employees, and/or agents, has created an unconstitutional policy and/or custom of the Village to take Area H without just compensation.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Seventy Five (175.) of Plaintiff's Complaint.

176.    The Village, through the Board of Trustees, Ostenburg, Kerestes, Mick, and/or Village executives, employees, and/or agents, had knowledge and/or acquiesced in the policy and/or custom of the Village of taking Area H without just compensation.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Seventy Six (176.) of Plaintiff's Complaint.

177.    The Village's failure, through the Board of Trustees, through its Trustees, Ostenburg, Kerestes, Mick, and/or Village executives, employees, and/or agents, to issue business licenses, permits, certificates of occupancy, and variances, exposes Thorncreek III and Thorncreek Management and its agents to criminal prosecution and citation, and leaves Area H subject to entry by the Village and/or its agents.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Seventy Seven (177.) of Plaintiff's Complaint.

178.    The Village's actions and regulations, through its agents, of Area H are so onerous that the effect is tantamount to a direct appropriation or ouster.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Seventy Eight (178.) of Plaintiff's Complaint.

179.    The Village's actions described herein do not substantially advance legitimate state interests and otherwise deny Thorncreek III and Thorncreek Management of economically viable use of Area H.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Seventy Nine (179.) of Plaintiff's Complaint.

180.    The acts described above amount to a regulatory taking of the Area H property by the Village.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Eighty (180.) of Plaintiff's Complaint.

181.    The acts described above require inverse condemnation of Area H, requiring The Village to buy Area H and justly compensate Thorncreek III and Thorncreek Management for the same.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Eighty One (181.) of Plaintiff's Complaint.

182.    Thorncreek III requests this relief in this Court prior to receiving a state determination on the issue because the claims asserted by the Village appear to give rise to compulsory counterclaims under Rule 13, which must be asserted here or they are potentially subject to loss.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Eighty Two (182.) of Plaintiff's Complaint.

183.    The above actions have otherwise proximately caused Thorncreek III and Thorncreek Management substantial damages including those set forth in Paragraph 126 herein.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Eighty Three (183.) of Plaintiff's Complaint.


WHEREFORE, the Defendants request Count III be dismissed. Defendants deny Plaintiffs are entitled to any relief.


## COUNT IV --- CONSPIRACY TO DEPRIVE THORNCREEK III'S RIGHTS TO EQUAL PROTECTION OF THE LAWS IN VIOLATION OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION:

### 42 U.S.C. § 1985

184.    Plaintiffs incorporate Paragraphs 1-183 as if each such Paragraph were re-stated in its entirety.

**ANSWER:**    Defendants incorporate their responses to Paragraphs One (1.) through One Hundred Eighty Three (183.) as their answer to Paragraph One Hundred Eighty Four (184.) of Plaintiff's Complaint, and incorporate those responses by reference.


185.    At all times relevant hereto, the conduct of the Village and the Defendants were subject to 42 U.S.C. §§ 1983, 1985, 1986, and 1988.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Eighty Five (185.) of Plaintiff's Complaint.

186.    The Village's agents and the Defendants are employees and/or executives of the Village and at all relevant times hereto were acting under color of state law and within the scope of each of their respective vested, actual, and/or apparent authority.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Eighty Six (186.) of Plaintiff's Complaint.

187.    The Village and/or Ostenburg and/or Kerestes and/or Mick and/or Trustees of the Village Board and/or other Village executives, employees, or agents have collectively conspired for the purpose of depriving, either directly or indirectly, Plaintiffs and/or their tenants at the Lofts at Thorncreek and/or potential tenants of the Lofts at Thorncreek of the equal protection of the laws and/or equal privileges and immunities under the laws.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Eighty Seven (187.) of Plaintiff's Complaint.

188.    The Village and each of the Defendants, and/or by and through their agents, have committed acts in furtherance of the conspiracy by denying Thorncreek III and Thorncreek Management business licenses, denying permits, denying certificates of occupancy, denying variances, passing laws targeted only at the Lofts at Thorncreek, requiring Thorncreek III and Thorncreek Management to comply with a unique set of rules not found in the Ordinance and that no other

owner/manager of a multi-unit dwelling has to comply, and by making and publishing slanderous and libelous statements about Thorncreek III and Thorncreek Management, the Lofts at Thorncreek, and its management.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Eighty Eight (188.) of Plaintiff's Complaint.

189.    Thorncreek III and Thorncreek Management and/or their tenants at the Lofts at Thorncreek and/or potential tenants of the Lofts at Thorncreek have been injured and deprived of rights and privileges secured by the law because of the Village's systemic conspiracy and efforts to drive out lower income and minority residents from Area H and the Village at large.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Eighty Nine (189.) of Plaintiff's Complaint.

190.    The Village and each of the Defendants, by and through their agents, have committed these acts for the purpose of engaging in invidious racial discrimination with the intent of discouraging African-American and Hispanic residents from enjoying tenancy at the Lofts at Thorncreek and/or enjoying tenancy in the Village at large; and depriving Thorncreek III and Thorncreek Management business licenses, permits, certificates of occupancy, and variances in furtherance of that goal.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Ninety (190.) of Plaintiff's Complaint.

191.    The above actions have proximately caused Thorncreek III and Thorncreek
Management substantial damages including those set forth in Paragraph 126
herein.

**ANSWER:**    # Defendants deny the Allegations contained in Paragraph One Hundred
Ninety One (191.) of Plaintiff's Complaint.


WHEREFORE, the Defendants  request Count IV be dismissed.  Defendants deny
Plaintiffs are entitled to any relief.


## COUNT V --- WRONGFUL FAILURE TO PREVENT A 42 U.S.C. § 1985 VIOLATION:

### 42 U.S.C. § 1986

192.    Plaintiffs incorporate Paragraphs 1-191 as if each such Paragraph were re-
stated in its entirety.

**ANSWER:**    Defendants incorporate their responses to Paragraphs One (1.) through
One Ninety One (191.) as their answer to Paragraph One Hundred Ninety Two (192.) of
Plaintiff's Complaint, and incorporate those responses by reference.


193.    At all times relevant hereto, the conduct of the Village and the Defendants
were subject to 42 U.S.C. §§ 1983, 1985, 1986, and 1988.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred
Ninety Three (193.) of Plaintiff's Complaint.

194.    The Village's agents and the Defendants are employees and/or executives of the Village and at all relevant times hereto were acting under color of state law and within the scope of each of their respective vested, actual, and/or apparent authority.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Ninety Four (194.) of Plaintiff's Complaint.

195.    The Village, through its agents, and some or all of the Defendants, had actual knowledge that the conspiracy wrongs described herein were being committed or about to be committed.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Ninety Five (195.) of Plaintiff's Complaint.

196.    The Village, through its agents, and some or all of the Defendants, had the power (statutory, enforcement, through employment, oversight, or otherwise) to prevent and/or aid in preventing the commission of the conspiracy described herein.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Ninety Six (196.) of Plaintiff's Complaint.

197.    The Village, through its agents, and some or all of the Defendants, refused to prevent and/or aid in the prevention of the conspiracy described herein.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Ninety Seven (197.) of Plaintiff's Complaint.


198.    The wrongful acts in furtherance of the conspiracy described herein could have been prevented by reasonable diligence of the Village, through its agents, and some or all of the Defendants.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Ninety Eight (198.) of Plaintiff's Complaint.


199.    The above actions have proximately caused Thorncreek III and Thorncreek Management substantial damages including those set forth in Paragraph 126 herein.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph One Hundred Ninety Nine (199.) of Plaintiff's Complaint.


WHEREFORE, the Defendants  request Count V be dismissed.  Defendants deny Plaintiffs are entitled to any relief.


## COUNT VI --- DENIAL OF EQUAL PROTECTION
## IN VIOLATION OF THE ILLINOIS CONSTITUTION

200.    Plaintiffs incorporate Paragraphs 1-199 as if each such Paragraph were re-stated in its entirety.

**ANSWER:**     Defendants incorporate their responses to Paragraphs One (1.) through One Hundred Ninety Nine (199.) as their answer to Paragraph Two Hundred (200.) of Plaintiff's Complaint, and incorporate those responses by reference.

201.     The actions of the Village and its agents and the actions of the Defendants described herein violate and continue to violate Thorncreek III and Thorncreek Management's Equal Protection rights under the Illinois Constitution.

**ANSWER:**     Defendants deny the Allegations contained in Paragraph Two Hundred One (201.) of Plaintiff's Complaint.

202.     The Village is bound by the acts of its executives, employees, agents, and representatives.

**ANSWER:**     Defendants admit the Allegations contained in Paragraph Two Hundred Two (202.) of Plaintiff's Complaint.  This wording does call for a legal conclusion.

203.     The above actions, re-stated and incorporated herein, have proximately caused Thorncreek III and Thorncreek Management substantial damages including those set forth in Paragraph 124 herein.

**ANSWER:**     Defendants deny the Allegations contained in Paragraph Two Hundred Three (203.) of Plaintiff's Complaint.

WHEREFORE, the Defendants request Count VI be dismissed. Defendants deny Plaintiffs are entitled to any relief.


## COUNT VII --- DENIAL OF DUE PROCESS IN VIOLATION OF THE ILLINOIS CONSTITUTION

204.    Plaintiffs incorporate Paragraphs 1-203 as if each such Paragraph were re-stated in its entirety.

**ANSWER:**    Defendants incorporate their responses to Paragraphs One (1.) through Two Hundred Three (203.) as their answer to Paragraph Two Hundred Four (204.) of Plaintiff's Complaint, and incorporate those responses by reference.


205.    The actions of the Village and its agents and the actions of the Defendants described herein violate and continue to violate Thorncreek III and Thorncreek Management's due process rights under the Illinois Constitution.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph Two Hundred Five (205.) of Plaintiff's Complaint.


206.    The Village is bound by the acts of its executives, employees, agents, and representatives.

**ANSWER:**    Defendants admit this is generally true as long as they are acting within the scope of their authority. This Paragraph does call for a legal conclusion.

207.    The above actions, re-stated and incorporated herein, have proximately caused Thorncreek III and Thorncreek Management substantial damages including those set forth in Paragraph 126 herein.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph Two Hundred Seven (207.) of Plaintiff's Complaint.


WHEREFORE, the Defendants  request Count VII be dismissed.  Defendants deny Plaintiffs are entitled to any relief.


## COUNT VIII --- VIOLATION OF THE ILLINOIS CIVIL RIGHTS ACT

208.    Plaintiffs incorporate Paragraphs 1-207 as if each such Paragraph were re-stated in its entirety.

**ANSWER:**    Defendants incorporate their responses to Paragraphs One (1.) through Two Hundred Seven (207.) as their answer to Paragraph Two Hundred Eight (208.) of Plaintiff's Complaint, and incorporate those responses by reference.


209.    The actions of the Village and its agents and the actions of the Defendants described herein violate and continue to violate the Illinois Civil Rights Act.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph Two Hundred Nine (209.) of Plaintiff's Complaint.


210.    The Village has and continues to utilize criteria or methods of administration that have the effect of subjecting Area H tenants and prospective tenants to

discrimination because of their race, color, or national origin.  The same has proximately caused harm to Thorncreek III and Thorncreek Management.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph Two Hundred Ten (210.) of Plaintiff's Complaint.


211.    The Village is bound by the acts of its executives, employees, agents and representatives.

**ANSWER:**    Defendants admit this is generally true as long as they are acting within the scope of their authority.


212.    The above actions, re-stated and incorporated herein, have proximately caused Thorncreek III and Thorncreek Management substantial damages including those set forth in Paragraph 126 herein.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph Two Hundred Twelve (212.) of Plaintiff's Complaint.


WHEREFORE, the Defendants  request Count VIII be dismissed.  Defendants deny Plaintiffs are entitled to any relief.


## COUNT IX --- LAND USE


213.    Plaintiffs incorporate Paragraphs 1-212 as if each such Paragraph were re-stated in its entirety.

**ANSWER:**    Defendants incorporates their responses to Paragraphs One (1.) through Two Hundred Twelve (212.) as their answer to Paragraph Two Hundred Thirteen (213.) of Plaintiff's Complaint, and incorporates those responses by reference.

214.    The actions of the Village and its agents and the actions of the Defendants described herein, including, but not limited to, the denial of business licenses, permits, certificates of occupancy, variances, making demands (upgrades, changing the racial make-up, etc.) not found in the Ordinance (and some which violate local, state, and federal law), and by passing laws targeted at the Lofts at Thorncreek only, are impermissible land-use restrictions.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph Two Hundred Fourteen (214.) of Plaintiff's Complaint.

215.    These actions and restrictions mean that, under the Ordinance, Thorncreek III and Thorncreek Management cannot legally operate in the Village, cannot rent housing, cannot market the property, cannot compete, and cannot comply with local, state, and federal discrimination laws, thereby denying Thorncreek III and Thorncreek Management of all economically beneficial and productive use of Area H.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph Two Hundred Fifteen (215.) of Plaintiff's Complaint.

216.     The Village's actions and regulations, through its agents, of Area H are so onerous that the effect is tantamount to a direct appropriation or ouster.

**ANSWER:**     Defendants deny the Allegations contained in Paragraph Two Hundred Sixteen (216.) of Plaintiff's Complaint.


217.     The Village's actions and regulations described herein do not substantially advance legitimate state or municipal interests and otherwise deny Thorncreek III and Thorncreek Management of economically viable use of Area H.

**ANSWER:**     Defendants deny the Allegations contained in Paragraph Two Hundred Seventeen (217.) of Plaintiff's Complaint.


218.     The acts and regulations described above amount to a regulatory taking of the Area H property by the Village.

**ANSWER:**     Defendants deny the Allegations contained in Paragraph Two Hundred Eighteen (218) of Plaintiff's Complaint.


219.     The actions of the Village and its agents and the actions of the Defendants described herein amount to impermissible land use restrictions under Illinois law.

**ANSWER:**     Defendants deny the Allegations contained in Paragraph Two Hundred Nineteen (219.) of Plaintiff's Complaint.

220.    Reasonable state remedies for redress are not available in the Village because the Village, in most instances, will not hear Thorncreek III and Thorncreek Management's requests for business licenses, permits, certificates of occupancy, and variances; and because any such remedies that are provided otherwise violate substantive and procedural due process as set forth herein.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph Two Hundred Twenty (220.) of Plaintiff's Complaint.

221.    The above actions, re-stated and incorporated herein, have proximately caused Thorncreek III and Thorncreek Management substantial damages including those set forth in Paragraph 126 herein.

**ANSWER:**    Defendants deny the Allegations contained in Paragraph Two Hundred Twenty One (221.) of Plaintiff's Complaint.

WHEREFORE, the Defendants  request Count IX be dismissed.  Defendants deny Plaintiffs are entitled to any relief.

Respectfully Submitted,

/s/Russell W. Hartigan_____
Russell W. Hartigan, One of the Attorneys for the Defendants

Russell W. Hartigan
Patrick H. O'Connor
Michael R. Hartigan

HARTIGAN & O'CONNOR P.C.
222 North LaSalle Street
Suite 2150
Chicago, Illinois 60601
(312)201-8880

STATE OF ILLINOIS          )
                           ) SS.
COUNTY OF COOK             )

<u>STATEMENT OF LACK OF KNOWLEDGE</u>

I, Russell W. Hartigan, on Oath solemnly depose and state that I am empowered to represent the interests of the Defendants, VILLAGE OF PARK FOREST, TOM MICK, in his individual capacity and as Village Manager, MAE BRANDON, in her individual capacity and as Village Trustee, BONITA DILLARD, in her individual capacity and as Village Trustee, GARY KOPYCINSKI, in his individual capacity and as Village Trustee, KENNETH W. KRAMER, in his individual capacity and as Village Trustee, ROBERT MCCRAY, in his individual capacity and as Village Trustee, GEORGIA O'NEILL in her individual capacity and as Village Trustee, LAWRENCE KERESTES, in his individual capacity and as Village Director of Community Development, JOHN A. OSTENBURG, in his individual capacity and as mayor of the Village of Park Forest, and SHEILA MCGANN in her capacity as Village clerk only, and with reference to Paragraphs One (1.), Two (2.), Fourteen (14.), Fifteen (15.) a portion of Paragraph Sixteen (16.), Paragraphs Eighteen (18.), Nineteen (19.), Thirty Five (35.), Sixty Eight (68.), Seventy Four (74.), Seventy Nine (79.), a portion of Paragraph Eighty One (81.), a portion of Paragraph Eighty Six (86.), Paragraphs Ninety Five (95.), One Hundred Twelve (112.), One Hundred Sixteen (116.), One Hundred Twenty Two (122.), One Hundred Twenty Three (123.), One Hundred Twenty Four (124.), One Hundred Twenty Five (125.), and a portion of Paragraph One Hundred Forty Eight (148.) of Plaintiffs' Amended Complaint hereby state that I have insufficient knowledge to form an opinion as to the truth or falsity of the allegations contained therein.

/s/Russell W. Hartigan_____
Russell W. Hartigan, One of the Attorneys
for the Defendants

SUBSCRIBED AND SWORN to before me this _____ day of _____, 2008.

_____
Notary Public

Russell W. Hartigan
Patrick H. O'Connor
Michael R. Hartigan
HARTIGAN & O'CONNOR P.C.
222 North LaSalle Street
Suite 2150
Chicago, Illinois 60601
(312)201-8880

## **AFFIRMATIVE DEFENSES**

As and for their Affirmative Defenses to the Plaintiff's Complaint, and without prejudice to any of the previous admissions and/or denials contained in their Answer, the Defendants, VILLAGE OF PARK FOREST, TOM MICK, in his individual capacity and as Village Manager, MAE BRANDON, in her individual capacity and as Village Trustee, BONITA DILLARD, in her individual capacity and as Village Trustee, GARY KOPYCINSKI, in his individual capacity and as Village Trustee, KENNETH W. KRAMER, in his individual capacity and as Village Trustee, ROBERT MCCRAY, in his individual capacity and as Village Trustee, GEORGIA O'NEILL in her individual capacity and as Village Trustee, LAWRENCE KERESTES, in his individual capacity and as Village Director of Community Development, JOHN A. OSTENBURG, in his individual capacity and as Mayor of the Village of Park Forest, and SHEILA MCGANN in her capacity as Village clerk only (hereafter "Defendants"), hereby state as follows:

1.      That the Defendants and each of them are entitled to qualified immunity for all claims made in the Complaint.

2.      That the Complaint fails to state a claim upon which relief can be granted.

3.      That the Plaintiffs failed to exhaust State law remedies seeking just compensation.

4.      For any State law claims, the Plaintiffs' claims are barred by Sections 2-104 and 2-206 of the Tort Immunity Act which provides immunity to local public entities and their employees against claims arising from the issuance, denial, suspension or revocation or the failure to issue, deny, suspend or revoke any permit, license, certificate,

approval, order or similar authorization, regardless of whether the authorization or permit should have been issued, denied, suspended or revoked.

     5.     Plaintiffs failed to take measure to conform to Village Ordinances.

     WHEREFORE, the Defendants pray that judgment be entered in their favor and against the Plaintiffs in accordance with the foregoing Affirmative Defenses.


     Respectfully Submitted,


     /s/Russell W. Hartigan_____
     Russell W. Hartigan, One of the Attorneys
     for the Defendants

Russell W. Hartigan
Patrick H. O'Connor
Michael R. Hartigan
HARTIGAN & O'CONNOR P.C.
222 North LaSalle Street
Suite 2150
Chicago, Illinois 60601
(312)201-8880