# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THORNCREEK APARTMENTS III, LLC, a foreign limited liability company, d/b/a THE LOFTS AT THORNCREEK; THORNCREEK MANAGEMENT, LLC, a foreign limited liability company,<br><br>Plaintiffs.<br>vs.<br><br>VILLAGE OF PARK FOREST, an Illinois municipal corporation; *et al.*,<br><br>Defendants. | Case No. 08 C 1225<br><br>District Judge Feinerman<br>Magistrate Judge Schenkier<br><br>Consolidated for Discovery Purposes Only With:<br><br>Case No: 08-C-0869<br>Case No: 08-C-4303 |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Thorncreek Apartments III, LLC and Thorncreek Management, LLC (collectively, "Thorncreek") have filed a motion seeking an order finding that six documents produced by the Village of Park Forest and the individual defendants (collectively, "the Village") to Thorncreek in or about March 2009 are not protected from disclosure by the attorney-client privilege or, alternatively, are not protected from disclosure because the privilege has been waived by the Village's production of these documents to Thorncreek (doc. # 123). For the reasons discussed below, the Court finds that, while some of the documents were privileged when originally created, the privilege has been waived. We therefore grant Thorncreek's motion.

**I.**

The discovery at issue was conducted by electronic means. Using third-party vendor Kroll On-Track ("Kroll"), the Village engaged in a three-step process to identify and produce documents on certain computer back up tapes that were responsive to discovery requests that Thorncreek made.

The first step of the process involved a search for documents on the back up tapes that contained certain words. These words, or "search terms," were ones that the parties largely agreed upon and that, in a few instances, were ordered by the Court.

In the second step of this process, Kroll placed the documents identified through this search into an online database that was accessible only to counsel for the Village. This enabled counsel for the Village to screen the documents for responsiveness to the discovery requests, and for privilege, before making them available to Thorncreek.

In the third step of the process, Kroll placed the documents that were identified through the search terms and released by the Village for production into an online production database. Counsel for Thorncreek only could review the documents that were placed into this online database. Any documents that the Village elected to withhold from that database were not available to Thorncreek.

The Village alleges that as part of the second step of this process, it had in place a review system in which an attorney reviewed each document identified through use of the search terms to determine whether the document was "responsive," "non-responsive," or "privileged." The Village alleges that it gave each document one of those three labels ("responsive," "non-responsive," or "privileged"). In a March 19, 2009 email, the Village informed counsel the production folder would allow Thorncreek to review not only responsive documents, but also documents that the Village had

labeled as non-responsive (Defs.' Resp., Ex. 1 (03/19/11 11:41 a.m. email) – in order for the Village to show Thorncreek how many non-responsive documents had been identified in the review.

The briefing leaves somewhat murky how the Village intended to handle any documents it labeled as "privileged." The Village's March 19 email referenced above was sent in response to an email from Thorncreek earlier that day. In that earlier email, Thorncreek expressed concern that it would not be able to see the full results of the search. While recognizing that the Village would withhold and log documents from which it asserted privilege, Thorncreek was concerned that the Village would withhold documents it had considered non-responsive to the discovery requests (Defs.' Resp., Ex. 1 (03/19/11 10:46 a.m. email)). It was in response to this email that the Village said that Thorncreek "will have the opportunity to review ALL of the results for yourself" (*Id.* (03/19/11 11:41 a.m. email)) (emphasis in original). Given the context of these emails, we do not find that the March 19 email shows that Thorncreek intended to produce documents it labeled as privileged. We thus credit the Village's assertion that when documents were placed in the online production folder for Thorncreek to review, the Village intended that documents labeled as privileged would not be included (Defs.' Resp. at 7).

Beginning in March 2009, the Village posted documents to the Kroll online production database and thus made them available to Thorncreek (Pl.'s Mot. at 2). This was a rolling production, which continued until at least October 2009 (Defs.' Resp. at 7). At no time during this seven-month production did the Village contact Thorncreek to state that privileged documents had been inadvertently produced. At no time during this period did the Village produce a privilege log, an act that would have disclosed that the Village had intended to withhold documents on the basis of privilege. Moreover, Thorncreek's counsel has submitted an unrebutted affidavit that she had at

3

least three telephone conversations between June and September 2009 with the Village's counsel, during which she asked whether any documents had been withheld from the Village's production (Pls.' Mem., Ex. 1). According to Thorncreek's counsel, the Village's counsel replied that the Village was not withholding any documents, and as a result Thorncreek did not expect to receive a privilege log (*Id.*).

The issue of production of allegedly privileged materials first reared its head during the December 10, 2009 deposition of Thomas Mick, the Village Manager. At that deposition, the Village objected to Thorncreek's use of two documents, claiming that they were privileged and may have been inadvertently produced (Pls.' Mem. Ex. 3, at 311, 400). Subject to that objection, the Village's counsel allowed further questioning on each document. Following the deposition, Village counsel contacted Thorncreek counsel to report that certain documents that he had intended to withhold on the basis of privilege had been produced (Pls.' Mem. at 4). However, it was not until April 26, 2010, four months later, that the Village turned over to Thorncreek a document titled "Privilege Log - Documents Inadvertently Produced," identifying 159 documents that Thorncreek had marked "privileged" during its review but that were not withheld from the production database made available to Thorncreek. The Village has never logged as privileged any documents other than the 159 that appeared on the April 26, 2010 log as having been inadvertently produced. Thus, we presume that in its review, the Village did not identify and withhold any other responsive documents on the basis of privilege.

To the parties' credit, between April 26, 2010 and August 17, 2010, they resolved their disputes regarding most of these 159 documents (Defs.' Resp. at 3), which led the Village to produce an amended privilege log identifying 36 documents where privilege was asserted by the Village but

4

challenged by Thorncreek (Pls.' Ex. 4). Thereafter, through continuing discussions, the parties were able to resolve their disputes on all but the six documents that are the subject of the instant motion (Defs.' Resp. at 3).

Thorncreek's motion now seeks an order from the Court finding that these six documents are not protected by the attorney-client privilege; but, if they are, that the privilege was waived when the Village produced the documents. The Village claims that any disclosure of the privileged documents was inadvertent (Defs.' Mem. at 6-8), and that there has been no waiver of the privilege (*Id.* at 8-10).[1]

## II.

The Sixth Circuit has established a three-step inquiry to determine whether documents that already have been produced nonetheless can be withheld from use under a claim of privilege:

> As a threshold matter, the court must determine whether the disputed document is indeed [privileged]. If the document is not privileged, the inquiry ends. If the document is privileged, the court must then determine if the disclosure was inadvertent. Lastly, even if the document is found to be [privileged] and inadvertently produced, the court must, nonetheless determine whether privilege was waived.

*Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 387-88 (7th Cir. 2008) (internal citations omitted). We employ that sequential analysis here, addressing the issue of privilege in Part A and the issues of inadvertence and waiver in Part B.

---

[1] The Court notes that the Village asserts that the documents in issue also are protected by the work product doctrine. The Village offers no support for this conclusory assertion. Most fundamentally, the Village offers no evidence that the communications at issue were made in anticipation of litigation. Fed. R. Civ. P. 26(b)(3)(A). We therefore reject any assertion that these documents were protected by the work product doctrine when they were created.

5

## A.

In determining whether a document is subject to attorney-client privilege protection, the standard set forth nearly 50 years ago in *Radiant Burners, Inc. v. American Gas Ass'n*, 320 F.2d 314 (7th Cir.), *cert. denied*, 375 U.S. 929 (1963) still applies:

> (1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*See also United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983). Communications from the attorney to the client also may be protected, but only "(1) if it is shown that the client had a reasonable expectation in the confidentiality of the statement; or put another way, if the statement reflects a client communication that was necessary to obtain informed legal advice (and) which might not have been made absent the privilege . . .; or (2) if the communications tend to directly or indirectly reveal a client confidence." *IBJ Whitehall Bank & Trust Co. v. Corey & Associates, Inc.*, No. 97 C 5827, 1999 WL 617842 at *3 (Aug. 12, 1999) (quotations and citations omitted).

The attorney-client privilege may be waived if documents are disclosed to a third party. *IBJ Whitehall*, 1999 WL 617842 at *4. However, material protected by the attorney-client privilege may be shared with another party that has a common interest without waiving those protections. "Where two or more persons jointly consult an attorney concerning a mutual concern, their confidential communications with the attorney, although known to each other, will of course be privileged in a controversy of either or both of the clients with the outside world." *Id.* at 3. The common interest doctrine, of course, protects only those documents that otherwise would have been privileged in the origin. *Trading Technologies Intern., Inc. v. eSpeed, Inc.*, Nos. 04 C 5312, 05 C 1079, 05 C 4088, 05 C 4120, 05 C 4811, 05 C 5164, 2007 WL 1302765, at *1 (N.D. Ill. May 1, 2007).

In light of these well-settled principles, we consider whether the six disputed documents were privileged when created.

**Privilege Log Entry No. 1 (Document No. 96300046).** Although Thorncreek does not address challenged communication No. 1, which the Village asserts is protected by the attorney-client privilege, this email and attachments contain the same content as challenged Log Entry No. 2 (Document No. 96601968), which Thorncreek did address. This Court's finding on both documents is therefore the same (see below).

**Privilege Log Entry No. 2 (Document No. 96601968).** This email from Jason Danielian, a Village attorney, to one of the Village's building inspectors does not reveal any client confidences except for the "PS" line where Mr. Danielian briefly described some of the changes made to a sign ordinance amendment. We hold that only the "PS" line at the bottom of the email is privileged.

**Privilege Log Entry No. 8 (Document No. 94600195).** The parties have stipulated that only the last sentence of email's text was privileged when it was created (Defs.' Resp. at 5).

**Privilege Log Entries Nos. 24 and 26 (Document Nos. 78006256-7 and 78006268).** Both of these privilege log entries contain the same disputed document: an email from Village Attorney Mathias Delort providing answers to questions posed by Village Manager Lawrence Kerestes. Mr. Delort's email falls squarely within the sphere of attorney-client privilege; it reveals client confidences contained in Mr. Kerestes's questions, and was made in response to requests for legal advice. All of the recipients of Delort's email were officers or employees of the Village, and the subject matter of the questions and answers dealt with subjects of mutual concern that were within the interests of the recipients acting in their capacities as agents of the Village. As a result, the common interest doctrine applies. We hold that the last email of Number 24 and the last email of

Number 26 are privileged; the other portions of the email chain contained in these logged documents are not privileged.

**Privilege Log Entries Nos. 25 and 27 (Document Nos. 78106748 and 78401202)**. Both of these privilege log entries contain the same email from Mr. Kerestes to Mr. Delort, which posed the questions that Mr. Delort answered in the email response discussed above. The communication constituted a request for legal advice from the Village attorney and, while Mr. Kerestes also sent the email to a number of other Village officers and employees, the common interest doctrine applies once again. We hold that the last email of Number 25 and the email contained in Number 27 are privileged; the other email contained in these log entries are not privileged.

**Privilege Log Entry No. 36 (Document No. 46500662)**. This document contains two emails. Thomas Mick, the Village's Manager, sent the first email (found at the bottom of the document) to the Village President and a number of trustees, and copied Village Attorney Mathias Delort and the Deputy Village Manager. Mr. Mick linked to an article on a recent court opinion, gave some thoughts about its significance regarding the Village's strategy with Thorncreek, and stated: "[a]ny thoughts????" We view the thrust of this email as seeking business rather than legal advice; Mr. Mick's choice to only copy the Village attorney suggests an intent merely to keep him in the loop. But, even treating this email as a dual purpose document does not render it privileged. *IBJ Whitehall*, 1999 WL 617842, at *2 ("Documents prepared for both legal and non-legal review are not privileged").

However, Mr. Delort's response to the email, sent to Mr. Mick and all of the recipients of the original email, primarily constituted legal advice and would tend to at least indirectly reveal a client confidence since it analyzed the impact of a more recent case on the linked opinion and the

Village's legal position. Thus, we hold that only the email at the top of Number 36 is privileged, while the email at the bottom is not.

**B.**

Given these findings on the issue of privilege, our analysis now moves to the question of whether the privilege that originally existed in portions of these six documents has been waived. On September 19, 2008, while this case was pending but before the present privilege dispute arose, Congress amended Federal Rule of Evidence ("Rule") 502. The Rule "creates a new framework for managing disclosure issues in a cost effective manner in the age of large electronic document productions." *Coburn Group, LLC v. Whitecap Advisors LLC*, 640 F.Supp.2d 1032, 1037 (N. D. Ill. 2009) (citing Fed. R. Evid. 502 Advisory Committee's Note).

Specifically, Rule 502(b) states that a disclosure of privileged information does not operate as a waiver if "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)." Fed. R. Evid. 502(b). Rule 502 applies to all proceedings pending on September 19, 2008 "insofar as is just and practicable." Pub. L. No. 110-322 § 1(c), 122 Stat. 3537, 3538 (2008). This case was pending at the time Rule 502 was amended, and the facts giving rise to the present dispute did not arise until after the amendment. Thus, we conclude that it is just and practicable to apply Rule 502 to the waiver analysis here.

**1.**

We first consider whether the Village's production of the privileged documents was inadvertent. Prior to the passage of Rule 502(b), courts often would look to the extent of discovery

and the level of care exercised during pre-production review to determine whether a disclosure was inadvertent. *See Judson Atkinson*, 529 F.3d at 388. *See also Harmony Gold U.S.A., Inc. v. FASA Corp.*, 169 F.R.D. 113, 116 (N. D. Ill. 1996) ("Courts have not established a bright-line rule for determining whether a document was inadvertently produced; instead, courts look at the circumstances surrounding the disclosure."). However, cases decided in the Northern District of Illinois since the passage of 502(b) have largely abandoned this multi-factor analysis, and instead have asked "whether the party intended a privileged or work-product protected document to be produced or whether the production was a mistake." *Coburn*, 640 F.Supp.2d at 1038. *See also Kmart Corp. v. Footstar, Inc.*, No. 09 C 3607, 2010 WL 4512337, at *3 (N. D. Ill. Nov. 2, 2010); *Sidney I. v. Focused Retail Property*, No. 09 C 6879, 2011 WL 1238920, at *4 (N. D. Ill. Mar. 30, 2011). This "much simpler" analysis is preferred because the drafters' choice to separate inadvertent disclosure from subparts (b)(2) and (b)(3) suggests that they did not intend for courts to repeatedly consider the same facts at each step of Rule 502(b). *Coburn*, 640 F.Supp.2d at 1038. That is the analysis we will employ here.

"When the producing party claims inadvertent disclosure it has the burden of proving . . . . that the privilege has not been waived." *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co., Inc., see also Heriot v. Byrne*, 257 F.R.D. 645, 658 (N.D. Ill. 2009); *Square D Co. v. E.I. Electronics, Inc.*, 246 F.R.D. 385 (N.D. Ill. 2009) (party asserting attorney-client privilege bears burden of showing that privilege applies and has not been waived). *See also, Curto v. Medical World Comm., Inc.*, 2011 WL 1793259 (party involving attorney-client privilege also bears burden of showing it was not waived); *Robbins v. Meyers, Inc.*, 2011 WL 1065993 (W.D.N.Y. 20011)

10

(absence of waiver treated as element of attorney-client privilege). On this record, we find that the product was inadvertent.

The Village argues that the production of these documents was unintentional, stating that its counsel was under the impression that documents that the Village had marked as "privileged" during its review of documents in the Kroll database would be automatically withheld from the production database that was made available to Thorncreek (Defs.' Resp. at 7). Moreover, once Thorncreek attempted to use some of these documents at Mr. Mick's deposition, the Village's counsel objected on the basis of privilege and stated that the documents may have been inadvertently produced or overlooked during discovery. After the deposition, the Village contacted Thorncreek to emphasize that the communications had been produced inadvertently and that they claimed privilege as to these communications. All of this suggests that the Village did not intend to produce privileged documents.

That said, the Village's statements to Thorncreek's counsel that no privileged documents were withheld does give us pause about what the Village intended. The Village's failure to provide a privilege log for months after that production (and not until the issue arose during the Mick deposition) adds to that pause. However, we are not persuaded by this evidence that the Village intended to produce these documents. There is no evidence that the Village sought to use these documents affirmatively – or even knew they had been produced until plaintiffs sought to use two of them at the Mick deposition. And, when plaintiffs sought to use these documents, the Village's counsel immediately objected. That conduct is inconsistent with an intentional production. On balance, therefore, we are persuaded that the production was inadvertent.

**2.**

Having found that the privileged portions of the documents were produced inadvertently, we must next determine whether the Village took reasonable steps to prevent the disclosure. Fed. R. Evid. 502(b)(2). According to the Advisory Committee Notes to Rule 502(b), "the rule does not explicitly codify" the multi-factor test used in prior case law to determine whether inadvertent disclosure is a waiver (taking into consideration the reasonableness of precautions taken, the time taken to rectify the error, the scope of discovery, the extent of disclosure, and the overriding issue of fairness) because it was "really a set of non-determinative guidelines that vary from case to case." Fed. R. Evid. 502(b) Advisory Committee Notes. However, the Notes state that the rule is "flexible enough to accommodate any of those listed factors." *Id.* In this case, consideration of these factors leads the Court to find waiver.

We begin with the reasonableness of the precautions taken. On this score, we have received precious little from the Village: an email written by the Village's counsel explaining to Thorncreek that he "spent countless hours reviewing" a relatively large amount of documents and marked each document either "responsive," "non-responsive," or "privileged" in the Kroll database (Defs.' Resp., 03/19/09 11:41 a.m. email). This level of description falls well short of what we would expect for an adequate account of the review procedure, especially in light of the fact that the Village did not submit an affidavit from the Village on this point. *Compare, Coburn*, 640 F.Supp.2d at 1039 (finding an affidavit outlining a six-step review process sufficient to deny waiver; *and Kmart*, 2010 WL 4512337 at *4 (holding that an affidavit from counsel stating that he personally reviewed

documents with an eye toward identifying any privilege issues was an inadequate description without any further facts)) (internal quotations omitted).

Moreover, we have little confidence in the reasonableness of the Village's precautions when the most the Village can say is that it "thought" that marking a document as "privileged" during its review process would cause Knoll to withhold it from the production database that Thorncreek could later view (Defs.' Resp. at 7). It would have been a simple matter for the Village to check the production database created by Knoll – *before* it went live online and became available to Thorncreek – to verify that privileged documents were not disclosed. Plainly, the Village did not do so. Given the importance that parties typically attach to protecting even arguably privileged communications, one would have expected the Village to perform such a verification check. The failure to do so is strong evidence of the inadequacy of the Village's precautions.

Perhaps most telling in assessing the adequacy of the safeguards is the abject failure of the Village's process to protect allegedly privileged documents. The Village did not succeed in identifying *and* withholding from production even a single privileged document. The privilege log that the Village belatedly served in April 2010 logged 159 documents as privileged – and, every single one of them had been produced to Thorncreek.

Thus, the Village's procedures for privilege review were completely ineffective: each and every document the Village sought to retain as privileged was inadvertently disclosed to Thorncreek. It is "axiomatic that a screening procedure that fails to detect confidential documents that are actually listed as privileged is patently inadequate." *Harmony Gold*, 169 F.R.D. at 117. The Village's disclosure of every one of the 159 documents the Village initially claimed were privileged is compelling evidence that it did not take reasonable precautions.

13

The scope and extent of discovery do not weigh against a finding of waiver. The Village does not clearly state the volume of production. As best as we can piece together from the Village's brief (Defs.' Resp. at 7), some 250,000 pages were reviewed and produced. There is no question that this is a significant volume, especially if – as appears from the email exchanges – only one Village attorney was conducting the review without any assistance. But, that must be balanced against the fact that a generous amount of time was allowed for the production. As the Village notes, there was a rolling production that commenced in March 2009 and did not end until at least October 2009 – a six-month period.

We also find that the Village failed to rectify the error in a timely way. In so finding, we are mindful that the Village flagged the issue immediately upon Thorncreek's attempt to use two of the documents at the Mick deposition in December 2009. While the Village took more time than it should have taken to produce a privilege log for the disputed documents thereafter, we find more significant the Village's failure to identify and rectify the error well before December 2009.

The production commenced in March 2009. Village counsel stated that he expected privileged documents to be excluded from the production database. Thorncreek plainly was accessing that database, reviewed documents, and selecting certain ones for production. The Village also had access to that same online database.

Yet, for some nine months, the Village apparently had no inkling that the production database contained documents that the Village wished to withhold as privileged, or that Thorncreek was reviewing and obtaining those documents. If that is true (and we accept that it is), that means the Village was not paying any attention whatsoever to what documents its opponent in the litigation was selecting from the database. Perhaps Thorncreek simply selected all of them; the parties' briefs do

14

not tell us if this is so. But, even if that were the case, a single visit to the production database could have alerted the Village to the problem.

And, certainly the Village would have been clued into the problem had it prepared a privilege log at any time during the nine months between the commencement of the rolling production and the Mick deposition. The Village would have benefitted from timely creating a privilege log. *See Wunderlich-Malec*, 2007 WL 3086006 at *4 ("Weighing in [the disclosing party's] favor is the fact that it did produce a privilege log prior to this incident that identified the documents as privileged"). By contrast, the fact that the Village failed to prepare the log deferred unnecessarily the discovery of this issue for some nine months. This failure weighs against the Village in the waiver analysis.

Finally, we consider the "overriding issue of fairness." In the circumstances, we find no unfairness to the Village in allowing Thorncreek continued access to the documents in issue (two of which were used in a deposition), and thus holding the Village responsible for its failure to take reasonable care to safeguard the privilege or to rectify the inadvertent error once it occurred.

## CONCLUSION

For the foregoing reasons, plaintiff's motion (doc. # 123) is granted. We find that to the extent that the six disputed documents were privileged when created, the privilege has been waived. The waiver extends only to the privilege we have found in certain of the six documents at issue; the

waiver is limited to those documents, and does not sweep more broadly. Those six documents may be used by the parties to the extent they are admissible under the applicable rules of evidence, a determination that will be made by the presiding district judge.

**ENTER:**

SIDNEY I. SCHENKIER
United States Magistrate Judge

**Dated: August 9, 2011**