UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| THORNCREEK APARTMENTS III, LLC, | ) | |
| a foreign limited liability company, | ) | |
| D/B/A THE LOFTS AT THORNCREEK; | ) | |
| THORNCREEK MANAGEMENT, LLC, | ) | |
| a foreign limited liability company, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 2008 C 1225 |
| | ) | |
| VILLAGE OF PARK FOREST, an | ) | Honorable Judge Gary Feinerman |
| Illinois Municipal corporation; | ) | |
| TOM MICK, in his individual capacity | ) | Consolidated with 2008 C 4303 |
| and a Village Manager, MAE | ) | and 2008 C 869 |
| BRANDON, in her individual capacity | ) | for Summary Judgment |
| and as Village Trustee; BONITA | ) | |
| DILLARD, in her individual capacity | ) | |
| and as Village Trustee, GARY | ) | |
| KOPYCINSKI, in his individual | ) | |
| capacity and as Village Trustee, | ) | |
| KENNETH W. KRAMER, in his | ) | |
| individual capacity and as Village | ) | |
| Trustee, ROBERT McCRAY, in | ) | |
| his individual capacity and as | ) | |
| Village Trustee; GEORGIA O'NEILL, | ) | |
| in her individual capacity and as | ) | |
| Village Trustee; LAWRENCE | ) | |
| KERESTES, in his individual | ) | |
| capacity and as Village Director of | ) | |
| Community Development; JOHN A. | ) | |
| OSTENBURG, in his individual | ) | |
| capacity and as Mayor of the | ) | |
| Village of Park Forest; SHEILA | ) | |
| McGANN, in her capacity as Village | ) | |
| Clerk only | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
## OF THEIR MOTION FOR SUMMARY JUDGMENT

NOW COME the Defendants, VILLAGE OF PARK FOREST, an Illinois Municipal corporation; TOM MICK, in his individual capacity and as Village Manager, MAE BRANDON, in her individual capacity and as Village Trustee; BONITA DILLARD, in her individual capacity and as Village Trustee, GARY KOPYCINSKI, in his individual capacity and as Village Trustee, KENNETH W. KRAMER, in his individual capacity and as Village Trustee, ROBERT McCRAY, in his individual capacity and as Village Trustee; GEORGIA O'NEILL, in her individual capacity and as Village Trustee; LAWRENCE KERESTES, in his individual capacity and as Village Director of Community Development; JOHN A OSTENBURG, in his individual capacity and as Mayor of the Village of Park Forest; SHEILA McGANN, in her capacity as Village Clerk only; (hereafter collectively referred to as "VILLAGE DEFENDANTS"), by and through their attorneys, HARTIGAN & O'CONNOR, P.C. and submit the attached Memorandum of Law in Support of their Motion for Summary Judgment.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES………………………………………………………….. v-ix

ARGUMENT…………………………………………………………………………. 1

    I.      Introduction…………………………………………………………… 1

    II.    Standard of Review…………………………………………………. 5

    III.   Count I Must Fail Because There Was No Violation of the 14th Amendment Equal Protection Clause………………………………... 5

          A.     There is no "similarly situated" comparator property within the Village of Park Forest………………………..…... 12

          B.     There was a Rational Basis for the Village's Decisions......... 13

               1.     Business License Denial…………………………………. 14

               2.     Electrical Ordinance (18-290 (11)/18-33 and Certificate of Occupancy Requirement (18-255(b))/Sign Permits (118-302)…………………… 15

               3.     Conditional Use Permit………………………………… 17

          C.     If there is no violation of the Equal Protection Clause of the 14th Amendment to the U.S. Constitution, then Plaintiffs' Count VI state law equal protection claim must similarly fail.. 18

          D.     Count IV must fail because there can be no conspiracy if there is no underlying violation of Plaintiffs' right to equal protection………………………………………………………… 18

          E.     Count IV must also fail pursuant to the intra-corporate conspiracy doctrine…………………………………………… 19

          F.     Count V must fail because there is no conspiracy to prevent.. 20

    IV.   Count II Must Fail Because There Was No Violation of Procedural and Substantive Due Process……………………………………… 20

          A.     Claim was not ripe before filing federal actions……………... 20

          B.     There was No Violation of Thorncreeks' Right to Procedural Due Process………………………………………... 21

C. There was No Violation of Thorncreek's Right to Substantive Due Process……………………………………… 23

D. If there is no violation of Plaintiffs' 14th Amendment right to Due Process, Plaintiff's Count VII alleging a violation of due process clause of the Illinois Constitution must similarly fail…25

V. Plaintiff's Counts III and IX Must Fail Because There Was No Taking/Inverse Condemnation of The Thorncreek Properties or a Land Use Violation…………………………………………………… 26

A. Takings and Land Use Claim Are Not Ripe for Adjudication.. 27

B. Threat of Imminent Domain/Condemnation Insufficient to Avoid Ripeness Doctrine………………………………… 28

C. Even if the claims are ripe for adjudication, Thorncreek has failed to show a regulatory taking the deprived the three properties of all economic use………………………………… 29

VI. The Village President, Board of Trustees and Village Clerk are Entitled to Absolute Immunity for Legislative Acts…………………… 30

VII. The Village Defendants are entitled to qualified immunity………….. 31

VIII. The Village of Park Forest Cannot Be Subject to Liability for the Acts of the Village Manager or Building Commissioner Who Do Not Have Final Policy-Making Authority……………………………………….. 33

IX. Plaintiffs' Count VIII Must Fail Because There Is No Violation of the Illinois Civil Rights Act…………………………………………………… 34

CONCLUSION……………………………………………………………….......35

iv

# TABLE OF AUTHORITIES

**Cases:**

*Aida Food and Liquor v. City of Chicago*, 439 F.3d 397 (7th Cir. 2006)............... 12

*Albiero v. City of Kankakee*, 122 F.3d 417 (7th Cir.1997)................................ 24

*Albiero v. City of Kankakee*, 246 F.3d 927 (7th Cir. 2001).............................. 17

*Allen v. City of Chicago*, 828 F.Supp. 543 (N.D. Ill. 1993)............................ 19

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).................................... 5

*Anderson v. Romero*, 72 F.3d 518 (7th Cir. 1995)........................................ 32

*Barrows v. Wiley*, 478 F.3d 776 (7th Cir. 2007)........................................21

*Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564 (1972)............................ 21

*Belcher v. Norton*, 497 F.3d 742 (7th Cir. 2007)........................................24

*Biddison v. City of Chicago*, 921 F.2d 724 (7th Cir. 1991)............................. 27

*Bogan v. Scott-Harris,* 523 U.S. 44 (1998)................................................ 30

*Brown v. City of Michigan City, Ind.,* 462 F.3d 720 (7th Cir. 2006).................. 22, 25

*Burrell v. City of Kankakee*, 815 F.2d 1127 (7th Cir. 1987)............................ 23

*Calhoun v. Ramsen*, 408 F.3d 375 (7th Cir. 2005)....................................... 33

*Celotex Corp v. Catrett*, 477 U.S. 317 (1986)............................................. 5

*Chicago Miracle Temple Church v. Fox*, 901 F. Supp. 1333 (N.D. Ill. 1995)......... 30

*Coniston v. Village of Hoffman Estates*, 844 F.2d 461 (7th Cir. 1988)................5

*Covington Court v. Village of Oak Brook*, 77 F.3d 177 (7th Cir. 1996)................29

*Daniels v. Williams*, 474 U.S. 327 (1986)................................................ 22

*Doherty v. City of Chicago*, 75 F.3d 318 (7th Cir. 1996)................................. 25

*Easter House v. Felder*, 910 F.2d 1387 (7th Cir. 1990)................................21

*Enquist v. Oregon Dep't of Agric*, 553 U.S. 591 (2008)………………………………… 6

*Erwin v. Daley*, 92 F.3d 521 (7th Cir. 1996), *cert. denied*, 519 U.S. 1116 (1997)…. 32

*Fabisak v. Will County Board of Commissioners*, 1994 WL 698509 (N.D. Ill 1994) 19

*Forseth v. Village of Sussex, et al.,* 199 F.3d 363 (7th Cir. 2000)…………………... 21

*Flying J Inc. v. City of New Haven*, 549 F.3d 538 (7th Cir. 2008)…………. 9, 10, 11, 14

*Gen. Auto Serv. Station v. City of Chi.*, 526 F.3d 991 (7th Cir. 2008)……………… 25

*Greater Chicago Combine & Ctr., Inc. v. City of Chicago*,
431 F.3d 1065 (7th Cir. 2005)……………………………………………………….. 24

*Hameetman v. City of Chicago*, 776 F.2d 636 (7th Cir. 1985)……………………… 18

*Hamlin v. Vaudenberg*, 95 F.3d 580 (7th Cir. 1996)………………………………… 23

*Harvey v. Town of Merrillville*, 2011 WL 2674830 (7th Cir. 2011)……………….12, 13

*Hudson v. Palmer*, 468 U.S. 517 (1984)…………………………………………… 22

*Hudson v. City of Chicago*, 374 F.3d 554 (7th Cir. 2004)………………………….. 21

*Hull v. Cuyahoga Valley Bd. of Educ.*, 926 F.2d 505 (6th Cir.)……………………… 19

*Indiana Land Company v. City of Greenwood*, 378 F.3d 705 (7th Cir. 2004)……12, 23

*Jett v. Dallas Independent School District*, 491 U.S. 701 (1989)………………….. 33

*Kohn v. Mucia*, 776 F.Supp. 348 (N.D.Ill. 1991)…………………………………… 30

*Kompare v. Stein*, 801 F.2d 883 (7th Cir. 1986)…………………………………… 32

*LaBella Winnetka v. Village of Winnetka, et al.*, 628 F.3d 937 (7th Cir. 2010)……8, 25

*LaSalle Bank v. City of Oakbrook Terrace*, 2008 WL 191190 (N.D. Ill. 2008)……...25

*Lauth v. McCollum*, 424 F.3d 631 (7th Cir. 2005)……………………………… 10, 12, 14

*Lee v. City of Chicago,* 330 F.3d 456 (7th Cir. 2003)…………………………………24, 25

*Lerch v. City of Green Bay*, 271 Fed.Appx. 528, 2008 WL 822254 (7th Cir. 2008).. 13

*Lucas v. S.C. Coastal Council*, 505 U.S. 1003 (1992)………………………………..29

*Mainstreet Organization of Realtors v. Calumet City*, 505 F.3d 742 (7th Cir. 2007)…6

*Mann v. Calumet City, Illinois*, 588 F.3d 949 (7th Cir. 2009)………………………… 15

*Marusic Liquors, Inc. v. Daley*, 55 F.3d 258 (7th Cir. 1995)…………………………  27

*Maulding Ded., LLC v. City of Springfield*, 453 F.3d 967 (7th Cir 2006)…………  12, 13

*McDonald v. Village of Winnetka*, 371 F.3d 992 (7th Cir. 2004)…………………… 7, 12

*Monell v. New York Dep't of Social Servs.*, 436 U.S. 658 (1978)…………………  33

*Muscarello v. Ogle Cty Board of Commr's, et al.*, 610 F.3d 416 (7th Cir. 2010)…..29, 30

*Nat'l Paint & Coatings Ass'n v. City of Chicago*, 45 F.3d 1124 (7th Cir. 1995)…….6, 24

*New Burnham Prairie Homes v. Vlg. of Burnham*, 910 F.2d 1474 (7th Cir. 1990).. 22, 23

*Oriental Health Spa v. City of Fort Wayne,* 864 F.2d 486 (7th Cir. 1988)…………  17

*Pearson v. Callahan*, 129 S.Ct. 808 (2009)……………………………………………32

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)……………………………………..34

*Pro-Eco v. Board of Comm'rs*, 57 F.3d 505 (7th Cir. 1995)…………………………..13,14

*Racine Charter One, Inc. v. Racine Unified Sch. Dist.*, 424 F.3d 677
(7th Cir. 2005)………………………………………………………………………………7, 13

*Rasche v. Village of Beecher*, 336 F.3d 588 (7th Cir. 2003)……………………………..34

*RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272 (7th Cir. 1997)……………............26

*Reed v. Village of Shorewood*, 704 F.2d 943 (7th Cir. 1983)……………………………30

*Reget v. City of LaCrosse*, 595 F.3d 691 (7th Cir. 2010)……………………………..9

*River Park Inc. v. City of Highland Park*, 23 F.3d 164 (7th Cir. 1994)…………20, 21, 24

*Rock Energy Cooperative v. Village of Rockton*, 614 F.3d 745 (7th Cir. 2010)…….28

*RJB Prop. Inc. v. Board of Ed. of City of Chicago*, 468 F.3d 1005 (7th Cir. 2006)…..7

*Schaper v. City of Huntsville*, 813 F.2d 709 (5th Cir. 1987)………………………… 23

*SGB Financial Services, Inc. v. Cons. City of Indianapolis-Marion County, IN*,
235 F.3d 1036 (7th Cir. 2000)……………………………………………………… 28

*Smith v. City of Chicago*, 457 F.3d 643 (7th Cir. 2006)……………………….. 5

*Smith on Behalf of Smith v. Severn*, 129 F.3d 419 (7th Cir. 1997)………………... 18

*Srail v. Village of Lisle*, 588 F.3d 940 (7th Cir. 2009)……………………….7, 11, 13

*St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616 (7th Cir. 2007) 5

*Stevens v. Umsted*, 131 F.3d 697 (7th Cir. 1997)………………………………… 32

*Swartz v. Scruton*, 964 F.2d 607 (7th Cir. 1992)………………………………… 24

*Travis v. Gary Community Health Center, Inc.*, 921 F.2d 108 (7th Cir. 1990), *cert.
denied*, 502 U.S. 812 (1991)………………………………………………………… 19

*Trvlrs. Cas. & Sur. Co. v. Interclaim (Bermuda) Ltd.*, 304 F.Supp.2d 1018
(N.D. Ill. 2004)………………………………………………………………………… 25

*Tuffendsam v. Dearborn County Board of Health*, 385 F.3d 1124 (7th Cir. 2004)… 17

*Union Pacific Railroad Co. v. Village of South Barrington,et al.*,
958 F.Supp. 1285 (N.D. Ill. 1997)…………………………………………………… 30

*Vela v. Village of Sauk Village*, 218 F.3d 661 (7th Cir. 2000)……………………… 34

*Vickery v. Jones*, 100 F.3d 1334 (7th Cir. 1996)…………………………………… 32

*Vigilante v. Village of Wilmette*, 88 F.Supp.2d 888 (N.D. Ill. 2000)……………….. 27

*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000)……………………………….6, 7

*Wheeler v. Lawson*, 539 F.3d 629 (7th Cir. 2008)……………………………………32

*Williamson Cty Reg. Planning Comm'n v. Hamilton Bank*,
473 U.S. 172 (1985)…………………………………………………………...20, 21, 27, 30

**Statutes:**

Illinois Constitution, Art.1, § 2……………………………………………………………   18, 26

Illinois Constitution, Art. 1, § 15……………………………………………………   27

42 U.S.C. § 1985…………………………………………………………..   20

42 U.S.C. § 1985(3)………………………………………………………..   19

42 U.S.C. § 1986……………………………………………………………   20

740 ILCS 23/1, *et seq.* …………………………………………………   35

745 ILCS 10/2-104……………………………………………………….   26

745 ILCS 10/2-206……………………………………………………….   26

Federal Rule of Civil Procedure 13……………………………………….   27

Federal Rule of Civil Procedure 56(c)…………………………………..   5

**Village of Park Forest Code of Ordinances:**

Sec. 22-32…………………………………………………………………   14

Sec. 22-468………………………………………………………….....   1

Sec. 22-472……………………………………………………………...16

Sec. 18-290 (11)…………………………………………………………   2, 15

Sec. 18-33……………………………………………………………………15

Sec. 18-255(b)…………………………………………………………   1, 15

Sec. 118-133(4)…………………………………………………………   3

Sec. 118-302……………………………………………………………   15

**ARGUMENT**

**I.    Introduction**

In 1989, the 632 units that comprise the "Thorncreek Townhomes" (Areas F, G and H) began to submit their business license application, plan of management and fair housing form (56.1 ¶10). Business licenses are required pursuant to Section 22-468 of the Village Code of Ordinances ("Village Code") (56.1 ¶78). Although the properties are legally organized as three separate and distinct entities, Thorncreek would submit business license applications on one application. (See *e.g.* Joint Appx. 84).

In 1995, Areas F, G and H were acquired by the Plaintiffs to this federal litigation. (56.1 ¶11). The intervening Plaintiff, Thorncreek Management, LLC, is simply one of two members of each of the three Thorncreek Limited Liability Corporations. (56.1, ¶2).

Due to their unique size as the largest multi-family rental property in the Village and their consistently high turnover rate, the Thorncreek entities, by and through their principal, David Clapper, have been complaining about the Village not providing enough vacant unit inspections since at least 2003. (Def. 56.1, ¶12). Vacant unit inspections must occur prior to receiving a certificate of occupancy which is required under Section 18-255(b) of the Village Code which provides:

> A certificate of occupancy shall be issued by the village building commissioner upon a determination that there are no violations of any applicable section of this Code in the interior and exterior of the dwelling unit after inspection has been made in accordance with the following:
>
> (1)    The building commissioner or his designated department employee inspects the interior and exterior of the dwelling unit to ascertain only visible Code violations. (Def. 56.1, ¶80)

On May 25, 2005, while recognizing the inherent problem in renting to tenants who were "marginally qualified" to pay their rent, Mr. Clapper requested that the Village's Building Commissioner provide more unit inspections (Def. 56.1, ¶17). Vacant units that did not pass inspection could not be legally rented. Thorncreek's failure to remedy the code violations led to vacancies and lost income. Thorncreek would then cry poor and state there was no money to improve the properties. This pattern (some might call it an excuse) began long before this litigation came to fruition.

In January 2005, after several years of service as the assistant to former Village Manager Janet Muchnik, Tom Mick was sworn in as Village Manager. (Def. 56.1, ¶4). During that year, Village department heads would participate in monthly meetings with representatives from Thorncreek's management company. Indeed, the Village Manager would regularly update the Board of Trustees regarding topics of discussion at these meetings and the progress that was (or was not) being made towards improving these properties and bringing them up to code. (Def. 56.1, ¶¶19-21, 26).

In November 2005, Thorncreek applied for re-financing from Lehman Brothers Bank for Area F. (Def. 56.1, ¶22). On January 30, 2007, after correcting outstanding code violations, Area F was sold for $16,000,000.00. (Def. 56.1, ¶39). In March 2007, the loan sought by Thorncreek on behalf of Area F was no longer necessary and was withdrawn. (Def. 56.1, ¶44).

In December 2005, the Village passed an amendment to Section 18-290 (11) of the Village Code that required a minimum of 100 ampere three-wire service at a change of occupancy for all dwellings. This amendment became effective on January 1, 2006. (Def. 56.1, ¶23-24, 79). Of the three Thorncreek properties, the only one that was

affected was Area G. (Def. 56.1, ¶25). Thorncreek Areas F and H were already supplied with 100 ampere service. This amendment became a major source of contention as shown below.

The impetus giving rise to this litigation was the Village's refusal to issue a business license to Thorncreek. Having a business license was of particular importance to Thorncreek for Area F which had an interested buyer in AIMCO. After it remedied existing code violations and submitted a separate business license application (per the Village's request), the Village issued a license for Area F in 2007. (Def. 56. 1, ¶¶30, 34-36). It is important to note that whether a business license was issued or not, Thorncreek was never prevented from doing business within the Village of Park Forest. (Def. 56.1, ¶67).

The leasing office for all three properties was located in Area F. Following the windfall sale of Area F, Thorncreek Areas G and H were forced to find a new place from which to conduct operations. On February 2, 2007, Thorncreek's management company made a written request to move its leasing office to a townhome located in Area G. (Def. 56.1, ¶40). On February 15, 2007, Building Commissioner Larrie Kerestes advised that a conditional use permit was required pursuant to 118-133(4) of the Village Code. (Def. 56.1, ¶41). An application for conditional use permit was submitted to the Village. (Def. 56.1, ¶42). Matters became contentious after Kerestes recommended certain conditions relative to the proposed leasing office. (Def. 56.1, ¶¶43, 45). While the conditional use permit application was pending, Thorncreek went ahead and moved its leasing/business operations to 3300 Western Avenue. (Def. 56.1, ¶47). It was business as usual.

3

On June 18, 2007, the conditional use permit for the leasing office went before the Village Plan Commission wherein four (4) conditions were recommended: (1) installing an ADA complaint washroom; (2) a ramp for the handicapped to access the leasing office; (3) upgrading the electrical consistent with ordinance (discussed *infra*.) and (4) additional parking spaces for the increased traffic. (See Def. 56.1, ¶49). The Plan Commission's recommendations were placed on the Village Board's Rules Meeting Agenda for September 4, 2007 at which time no action was taken due to the unanimous lack of support from the Board. (Def. 56.1, ¶52). The Board would consider the conditional use application after Thorncreek met the four conditions imposed by the Village Plan Commission. (Def. 56.1, ¶53). Because Thorncreek did not believe that the conditions were necessary and the Village believed that they were, both sides were at a standstill. In response to Thorncreek's uninterrupted operations from the converted townhome without a permit, the Village began issuing citations. (Def. 56.1, ¶55). The prosecution was initially a success after a hearing officer found Thorncreek liable for 217 days of illegal operation. (*Id.*) (*See also* Joint Appx. 148 for copy of 10/18/07 Order). Although citations were issued every day, the leasing office was never shut down. (Def. 56.1, ¶68). However, on March 12, 2008, the same hearing officer reconsidered his prior ruling and determined that the use of the leasing office was an "accessory use." (Def. 56.1, ¶65). The Village appealed that decision by filing an action for administrative review. The Village was, however, successful in obtaining fines against Thorncreek for illegal occupancy and failing to upgrade electric with respect to a particular unit located at 345 Forest. (Def. 56.1, ¶66).

On December 20, 2007, the Village filed a two count "Complaint for Injunctive and other Relief" against only Thorncreek Apartments II, LLC (Area G) and its management company, Atlantic Management LLC. (See 2008 C 869, Doc. #1, pgs. 7-43) for operating a business office without a conditional use permit and failing to comply with the ordinance requiring 100 ampere service.

It is at this time that an otherwise "garden variety zoning dispute" regarding a leasing office morphed into the three federal civil rights lawsuits that are the subject of Defendants' motion. *See Coniston v. Village of Hoffman Estates*, 844 F.2d 461, at 467 (7th Cir. 1988) (rejecting a "garden variety zoning dispute dressed up in the trappings of constitutional law").

## II.     Standard of Review

Summary judgment is proper when the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of fact as a matter of law. F.R.C.P. 56(c). *Celotex Corp v. Catrett*, 477 U.S. 317 (1986).  In determining whether a genuine issue of material fact exists, the court construes all facts in the light most favorable to the nonmoving party, and draws all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

## III.    Count I Must Fail Because There Was No Violation of the Equal
##         Protection Clause

The purpose of the Equal Protection Clause of the Fourteenth Amendment is to "'secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Smith v. City of Chicago*, 457 F.3d 643, 650

(7th Cir. 2006) (citation omitted). "If no fundamental rights or suspect categories are at issue, the general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.'" *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 637-638 (7th Cir. 2007) (citation omitted).

Neither fundamental rights (freedom of speech and religion) nor suspect categories (race, alienage and national origin) are at issue in these three matters. The Plaintiffs are corporations who cannot assert such rights. *See, Nat'l Paint & Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1129 (7th Cir. 1995) ("corporations do not have fundamental rights: they do not have liberty interests, period…[T]he only interest at stake is the interest in obtaining the maximum return on investment. That is not a fundamental right."). While the Thorncreek plaintiffs allege in the complaints that the Village's actions were motivated by the racial composition of their tenants, the Thorncreek plaintiffs lack standing to raise claims on their behalf. *See, Mainstreet Organization of Realtors v. Calumet City*, 505 F.3d 742, 746 (7th Cir. 2007) (one cannot sue in federal court to enforce someone else's legal rights). This is nothing more than a transparent attempt to constitutionalize an otherwise garden variety zoning dispute. The corporate plaintiffs are therefore left with having to show that the Village defendants irrationally singled them out and targeted them for discriminatory treatment as a so-called "class of one." *See, Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

**Class-Of-One**

The "class-of-one" theory of equal protection "presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that

must survive at least rationality review." *Enquist v. Oregon Dep't of Agric*, 553 U.S. 591, 605 (2008). The class-of-one theory is rarely successful. The Thorncreek entities must establish that (1) a state actor has intentionally treated them differently than others similarly situated, and (2) there is no rational basis for the difference in treatment. *Olech*, 528 U.S. 562, at 564; *Srail v. Village of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009).

> To succeed on a 'class of one' equal protection claim, a plaintiff must prove that   the state, without rational reason, treated it differently fro other similarly situated      entities. The plaintiff bears a 'very significant burden' of offering evidence that  other entities are similarly situated in all relevant respects. The plaintiff's   evidence must be such that it allows a reasonable jury to 'eliminate any  reasonably conceivable state of facts that could provide a rational basis for the classification.

*RJB Prop. Inc. v. Board of Ed. of City of Chicago*, 468 F.3d 1005, 1009-1010 (7th Cir. 2006).[1]

To be "similarly situated" for purposes of a class-of-one equal protection claim, the persons alleged to have been treated more favorably must be *prima facie* identical to the plaintiff *in all relevant respects. Srail*, 588 F.3d at 945. While this is not a "precise formula," it is nonetheless "clear that similarly situated individuals must be very similar indeed." *McDonald v Village of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004).

Following the *Olech* decision, courts in this Circuit have many occasions to consider "class-of-one" claims and have made clear that "it is difficult to succeed with such a claim." *McDonald*, 371 F.3d at 1001. Despite the extraordinary amount of discovery exchanged and conducted in these matters, this case is no different. Four of the more recent decisions rejecting class-of-one claims are discussed in greater detail

---

[1] This Court need not resolve the dispute in this circuit regarding whether the plaintiff must, in addition, prove  totally illegitimate animus. *See, Racine Charter One, Inc. v. Racine Unified School District,* 424 F.3d 677, 684 (7th Cir. 2005)

below, each of which support the Defendants' Motion for Summary Judgment in this matter.

**LaBella Winnetka v. Village of Winnetka, et al., 628 F.3d 937 (7th Cir. 2010)**

In *LaBella*, a fire caused the plaintiff-restaurant to shut down. *Id.* at 941. The village denied the plaintiff's request for permits to repair the interior and to re-open a portion of the restaurant while repairs were ongoing. *Id.* However, the village allowed other businesses within the same building to resume operations without requiring a permit. *Id.* Other restaurants located within the same building as the plaintiff were given their liquor licenses while the plaintiff's liquor license was denied. *Id.* Plaintiff claimed that these other businesses received favorable treatment through selective enforcement of ordinances and building codes because they were friendly with the village manager. *Id.* After the plaintiff was forced out of business, it filed a federal lawsuit claiming a (1) violation of the Equal Protection Clause and 14th Amendment; (2) violation of substantive due process and 14th Amendment for deprivation of property interest in its lease and restaurant business; (3) violation of procedural due process and the 14th Amendment for deprivation of its food and liquor license; and (4) intentional interference with its lease and prospective business expectancy. *Id.* at 940-1. The district court granted the village's motion to dismiss. The Seventh Circuit affirmed finding that the plaintiff failed to show that it was treated differently from similarly situated restaurants. *Id.* at 942-3. Although they were tenants within the same building, plaintiff was not identical to the other restaurants "in all material respects." Further, it was held that the Equal Protection Clause had no application where a "plaintiff is asking for a revision of policy rather than a restoration of equality." *Id.* at 943.

### *Reget v. City of LaCrosse*, 595 F.3d 691 (7th Cir. 2010)

In *Reget*, the plaintiff was a body shop owner who had a long and acrimonious relationship with the defendant dating back thirty years. *Id.* at 693. He claimed that the city forced to him to comply with a junk-dealer ordinance and discriminated against him with a proposed re-zoning plan, all in violation of his right to equal protection. *Id.* He was convinced that the city was trying to drive him out of business. *Id.* Summary judgment was granted in the city's favor after the district court held that plaintiff failed to submit evidence showing that similarly situated junk dealers received more favorable treatment from the city. *Id.* at 694. On appeal, plaintiff argued that the city: (1) selectively enforced its junk-dealer ordinance against him; (2) targeted him for rezoning in a discriminatory fashion; (3) selectively enforced noise ordinances. *Id.* at 693.

The Seventh Circuit held that the class-of-one claim failed at the first of the two-step analysis. The plaintiff could not show that other businesses actually violated the junk-dealer ordinance. *Id.* at 696. The plaintiff's property was never re-zoned, so the threat of re-zoning was not actionable. *Id.* Finally, there was no evidence that the noise ordinance was selectively enforced against the plaintiff and not others. *Id.* at 697. The district court's opinion was affirmed.

### *Flying J Inc. v. City of New Haven*[2], 549 F.3d 538 (7th Cir. 2008)

In *Flying J*, the plaintiff was a developer who purchased property for a travel plaza. The city's plan commission had other ideas for the property and opposed those plans. Plaintiff sued in state court and ultimately won on appeal. *Id.* at 541. While the state litigation was pending, the city amended its ordinance limiting the size of service stations to two acres. *Id.* at 542. The plaintiff was never given notice of the three public

---

[2] This decision was referenced *sua sponte* by Judge Norgle in Docket Entry #56 in case 2008 C 869.

hearings where the amendment was discussed and approved. *Id.* The plaintiff sued in federal court alleging that the city's actions violated its right to (1) substantive due process; (2) procedural due process and (3) equal protection under both the United States and Indiana Constitution. *Id.*

The district court dismissed the action finding that the plaintiff had not pled facts sufficient to overcome the presumption of rationality attached to a government action and accordingly had not pled the elements of its "class-of-one" equal protection claim. *Id.* at 545. The court further determined that rather than provide facts that negated any rational basis for the amendment, the plaintiff had proceeded under the theory that the amended ordinance was adopted out of animus. *Id.* Following *Lauth v. McCollum*, 424 F.3d 631, 634 (7th Cir. 2005), the district court held that evidence of animus was insufficient to negate the hypothesized justifications for the zoning ordinance and plaintiff could not overcome the presumption of rationality that accompanied the city's action. *Flying J,* 549. F.3d at 545.

On appeal, the Seventh Circuit reasoned that *Lauth* was instructive insofar that it created a standard where "a plaintiff who does not belong to any 'suspect' (that is, favored) class- by definition, the situation of a class-of-one plaintiff – must, to prevail, negative any reasonably conceivable state of facts that could provide a rational basis for the classification…**Animus comes into play only when no rational reason or motive being imaginable for the injurious action taken by the defendant against the plaintiff, the action would be inexplicable unless animus had motivated it.**" *Flying J*, 549 F.3d at 546 (citing *Lauth* 424 F.3d at 634) (emphasis added). The Court went on to find that "this standard reflects the fairly intuitive idea that a given action can have a

rational basis and be a perfectly logical action for a government entity to take even if there are facts casting its as one taken out of animosity." *Id.* at 547. It is only when the courts can think of no rational basis for the action that the concept of animus comes into play. The presumption of rationality was fatal to Flying J's claims. *Id.* at 548.

### *Srail v. Village of Lisle,* 588 F.3d 940 (7th Cir. 2009)

In *Srail*, the plaintiffs were residents of a subdivision who claimed that the village impermissibly discriminated against them by expanding water services to other subdivisions within Lisle, but not to their subdivision. *Id.* at 942. The district court granted summary judgment as to the equal protection claim and declined jurisdiction over the remaining state-law negligence claim. *Id.*

On appeal, the Seventh Circuit first determined that the plaintiffs were not members of a suspect class nor were they denied a fundamental right. *Id.* at 943. Therefore, a rational basis (as opposed to a strict scrutiny) standard was applied. *Id.* Plaintiffs failed to establish that there exist comparators with whom they are similarly situated and that the village lacked a rational basis for its decision. *Id.* at 944. Plaintiffs pointed to three different communities that they believed were similarly situated to their subdivision. *Id.* at 945. The Court held that there were significant differences between these communities and that they could not be considered a similarly situated comparator for equal protection analysis. *Id.* at 945-6. Further, the Court held that there was a rational basis behind the village's actions and to successfully show that there was no rational basis was "an onerous test to overcome." *Id.* at 946. The district court's decision granting summary judgment was affirmed.

Apart from the above-referenced decisions, this Circuit has consistently affirmed dismissal of "class-of-one" claims substantially similar to those being advanced by the Thorncreek plaintiffs:

- *Harvey v. Town of Merrillville*, 2011 WL 2674830 (7th Cir. 2011) (summary judgment against sub-division residents' claim of equal protection violation finding that there was no similarly situated comparator property);

- *Maulding Dev., LLC v. City of Springfield*, 453 F.3d 967 (7th Cir 2006) (summary judgment for city as to development company's class of one equal protection claim alleging that the city's failure to approve its plans was on account of race and claim that it was treated differently that any other developer);

- *Aida Food and Liquor v. City of Chicago*, 439 F.3d 397 (7th Cir. 2006) (summary judgment for city as to claim that city officials schemed to shut business down to make way for a Walgreens or CVS store by wrongful inspections, interference with liquor license and citations for electrical ordinance violations);

- *Indiana Land Company v. City of Greenwood*, 378 F.3d 705 (7th Cir. 2004) (rejecting plaintiff-developer's claim that city violated due process and equal protection when City denied its application for development and granted subsequent developer's identical application);

As Circuit Court Judge Richard Posner wrote in *Lauth*, "if any unexplained or unjustified disparity in treatment by public officials is therefore to be deemed a prima facie case of equal protection, endless vistas of federal liability are opened. Complete equality in enforcement is impossible to achieve." *Lauth,* 424 F.3d at 633. It is against this background that the facts of these three consolidated are applied.

### A. There are no "similarly-situated" comparator multi-family rental property within the Village of Park Forest

The 632 units that comprise the Thorncreek Townhomes are a very dominant presence within the tiny Village of Park Forest. Throughout this litigation, Thorncreek has made every effort to compare themselves to the Autumn Ridge Apartments. Try as

12

they might, the Thorncreek Townhomes cannot show that they are "similarly situated" to the Autumn Ridge Apartments. As the names alone would suggest, the physical differences between the "Thorncreek Townhomes" and "Autumn Ridge Apartments" are substantial. The difference in size is the first critical difference. According to Andrew Brown, the Autumn Ridge Apartments are comprised of 384 units consisting of four mid-rise buildings containing 304 units and 80 townhomes. (Def. 56.1, ¶¶69-70). There are no mid-rise units within any of the three Thorncreek phases.

As was the case in *Srail* and *Harvey* (cited *supra*), there is no "similarly situated" property in the Village of Park Forest. The Thorncreek Townhomes are properties unlike any other in the Village both in size and physical condition. *See Lerch v. City of Green Bay*, 271 Fed.Appx. 528, 2008 WL 822254 (7th Cir. 2008) Because there is no similarly situated comparator property in the Village identical to Thorncreek in "all material respects" (s*ee Maulding Dev., LLC,* 453 F.3d at 971), the Court need not reach the second element of equal protection analysis. The inquiry should end here.

### B.    There was a Rational Basis for the Village's Decisions

If the Court were to find that was a difference in treatment among similarly situated entities, then the analysis would shift to whether there was a rational basis for such treatment. To show that there is no legitimate government objective is a difficult test to overcome. *See, Pro-Eco v. Board of Comm'rs*, 57 F.3d 505, 515 (7th Cir. 1995); *see also, Racine Charter One, Inc*, 424 F.3d 677, 685 (explaining the rational basis test is satisfied when "any state of facts reasonably may be conceived to justify the classification"). For the reasons that follow, the Village clearly had a rational basis for its actions.

13

### 1. Business License Denial

There was a rational basis as to why the Village would not issue a business license to Thorncreek. The reasons include (1) outstanding code violations; (2) incomplete or missing plans of management over the course of multiple years; (3) failure to submit required Fair Housing Forms; and (4) failure to submit applications on behalf of all three properties. (Def. 56.1, ¶¶13, 29, 32, 37). By way of example, in 2005, the Building Commissioner advised that there were outstanding code violations. (Def. 56.1, ¶13). In 2006, the Village Manager denied Thorncreek's business license and based his decision upon an attached list of outstanding Code violations for all three properties. (Def. 56.1, ¶27, 32). In 2007, the business license application for Areas G and H was submitted in conjunction with the conditional use permit application. (Def. 56.1, ¶¶38, 42, 48). In February 2008, the Village Manager expressed his frustration that the plan of management was no different than the one submitted the year prior. (Def. 56.1, ¶59).

As his updates to the Board would indicate, Village Manger Tom Mick expressed a continual concern for public health and safety with Thorncreek – both of which are legitimate bases for taking action. Indeed, *See, e.g., Pro-Eco*, 57 F.3d 505, 514, (7th Cir. 1995). Indeed, his concerns are specifically contemplated in Section 22-32 of the Village Code. (Def. 56.1, ¶76). Consistent with *Lauth* and *Flying J*, *discussed supra*, the concept of illegitimate animus comes into play only when the Court can think of no rational basis for any of the challenged actions. Because there is an overriding presumption of rationality, the Court need not reach the issue of animus.

14

       **2.**    **Electrical Ordinance (18-290(11)/18-33 and Certificate of Occupancy Requirement (18-255(b))/Sign Permits (118-302)**

This Circuit has held that "building codes cannot be irrational. They do increase the cost of property (as do other conventional regulations of property), but if reasonably well designed, they also increase its value. Without them more buildings would catch fire, collapse, become unsightly, attract squatters, or cause environmental damage and by doing any of these things, reduce the value of other buildings in the neighborhood." *Mann v. Calumet City, Illinois*, 588 F.3d 949, 952 (7th Cir. 2009) (rejecting challenge to constitutionality of an ordinance forbidding the sale of a home without an inspection to determine whether it is in compliance with the city's building code).

Thorncreek has no right to a certificate of occupancy when the Village Building Commissioner and his inspectors determine that vacant units have Code violations. On January 29, 2007, Larrie Kerestes indicated that inspections would not be scheduled in Areas G and H because Thorncreek had not submitted its business license application. The following day Thorncreek submitted its business license application. (Def. 56.1, ¶¶37-38). In short, there was a rational basis for the interruption in inspections, however brief, as to areas G and H. As for permits for signage, there is evidence that Building Commissioner Larrie Kerestes advised that the proposed new leasing office signs were not in compliance with Village Code requirements. (Def. 56.1, ¶41).

Regarding the electrical ordinance which Thorncreek has so vehemently challenged in this litigation, it was the opinion of the Building Commissioner Larrie Kerestes that electrical upgrades were necessary to meet the needs of today's technology insofar that most Village housing stock only provided 60 ampere service. The new 100 ampere requirement applied to <u>all</u> homes within the Village at a change of

occupancy. (Def. 56.1, ¶¶23-24). It is quite a stretch to believe that the Village Board passed this ordinance with Thorncreek Area G in mind.

Further, there is no question that this ordinance was enforced against other rental properties. Indeed, both Thorncreek and Autumn Ridge expressed concerns with the cost associated with the electrical upgrade requirements. (Def. 56.1, ¶¶ 31, 72-3). Thorncreek will no doubt argue that the Village selectively enforced this particular ordinance against them and not against Autumn Ridge. But that ignores the fact that the 80 townhomes within Autumn Ridge were not affected by the passage of the electrical ordinance requiring 100 ampere electrical service at a change of occupancy because they were already supplied with 100 ampere electrical service. (Def. 56.1, ¶71). It was the mid-rise units within Autumn Ridge which were not in compliance with the electrical ordinance.

There is ample evidence showing that Thorncreek never had any intention to comply with this amended ordinance. Thorncreek devised it own nine-year plan to make the upgrades in Area G "where required." (Def. 56.1, ¶¶45-46, 61). During her deposition, Patricia Clapper, the regional property manager of the Thorncreek properties, was asked the following:

> **Q: Had you upgraded the electrical service to area G which was required by code since January 2006?**
>
> **A: We had not done anything with the electrical. *It wasn't necessary.*** (Def. 56.1, ¶31).

This is just a sample of the pervasive attitude Thorncreek took towards Village ordinances. Indeed, Thorncreek challenged the Village's Fair Housing Ordinance requirements (Village Code Sec. 22-472), but ultimately decided they had neither the

time nor the money to contest it. (Def. 56.1, ¶14-15). Thorncreek disputes whether there was truly a safety issue when the Village requires upgraded electrical at a change of occupancy. However, their opinion is immaterial if there is a legitimate state interest as there is here. See *Oriental Health Spa v. City of Fort Wayne*, 864 F.2d 486, 490 (7th Cir. 1988) ("legislative bodies are presumed to have acted constitutionally…the state or municipal interest is presumed to be legitimate").

### 3. Conditional Use Permit

The Village requested a conditional use permit because it reasonably believed that the converted townhome that was to be used as a leasing office was a conditional use rather than an accessory use. It reasonably believed that Thorncreek would need to satisfy certain conditions (i.e. ADA compliant ramp, washroom, parking spaces, upgraded electrical) prior to the issuance of the conditional use permit. (Def. 56.1, ¶¶43, 49). There is a rational basis behind these requirements. Further, Thorncreek cannot point to an example where another multi-family property requested to move its leasing office and a conditional use permit was not required.

The Village actions were always grounded in ordinance. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933-4 (7th Cir. 2001) (city took action against property because of its dilapidated condition). Even if there was evidence that the Village enforced its Village Code more stringently against Thorncreek than it did against others, a class-of-one claim fails when a party can only establish that he was a victim of uneven enforcement of local ordinance. *Tuffendsam v. Dearborn County Board of Health*, 385 F.3d 1124, 1128 (7th Cir. 2004) (rejecting a claim that a County health board violated the plaintiff's right to equal protection by requiring plaintiff, rather than the prior owner of the

property, to correct a septic tank problem). Indeed, "the Constitution does not require states to enforce their laws (or cities their ordinances) with Prussian thoroughness as the price of being allowed to enforce them at all. Otherwise few speeders would have to pay traffic tickets. Selective, incomplete enforcement of the law is the norm in this country." *Hameetman v. City of Chicago*, 776 F.2d 636, 641 (7th Cir. 1985).

Thorncreeks' Count I must be dismissed.

**C.      If there is no violation of the Equal Protection Clause of the 14th Amendment to the U.S. Constitution, then Plaintiffs' Count VI state law equal protection claim must similarly fail.**

Plaintiff's Count VI is premised under the Equal Protection Clause of the Illinois Constitution which provides that "no person shall be deprived of life, liberty or property without due process of law nor denied the equal protection of the law." Ill. Constitution, Art.1, § 2. (See Doc. #17, pg. 42). Equal protection challenges based upon the Illinois Constitution are evaluated under the same standard as the federal Constitution. *Smith on Behalf of Smith v. Severn*, 129 F.3d 419 (7th Cir. 1997).To the extent that this Court finds that there was no violation of the 14th Amendment right to equal protection, the Defendants ask that the Court similarly find that there was no violation of the Illinois Constitution Equal Protection Clause as set forth in Art 1, § 2.

Accordingly, Count VI must be dismissed.

**D.      Count IV must fail because there can be no conspiracy if there is no underlying violation of Plaintiffs' right to equal protection.**

The Thorncreek Plaintiffs allege in Count IV a conspiracy to deprive them of their federal right to equal protection. Although not specified, the Defendants assume that the Thorncreek Plaintiffs are proceeding under 42 U.S.C. § 1985(3): Depriving persons of

18

rights or privileges. If this Court finds that there was no violation of the Equal Protection Clause in the first instance, then this count must necessarily fail.

### E.    Count IV must also fail pursuant to the intra-corporate conspiracy doctrine.

An additional basis for dismissal of Count IV is the "intra-corporate conspiracy." Under this doctrine, "an agreement among two or more employees of a single corporation who simply meet in the regular course of their jobs is not considered a conspiracy. The employees are presumed to be one person, because each is functioning as a representative of the same entity." *Fabisak v. Will County Board of Commissioners*, 1994 WL 698509 at 3 (N.D. Ill. 1994) (*citing Travis v. Gary Community Health Center, Inc.*, 921 F.2d 108, 110-11 (7th Cir. 1990), *cert. denied*, 502 U.S. 812 (1991). It has further been held that the intra-corporate conspiracy doctrine applies to governmental organizations. *See, Allen v. City of Chicago*, 828 F.Supp. 543, 564 (N.D. Ill. 1993) ("Finding no reason to restrict the intra-corporate dealings doctrine to private entities, *see*, *Hull v. Cuyahoga Valley Bd. of Educ.*, 926 F.2d 505, 509-510 (6th Cir.) (employees and agents of school board are not separate "persons" to form a conspiracy), *cert. denied*, 501 U.S. 1261 (1991), we hold that the various participants identified by plaintiffs are not separate "people" capable of conspiring with each other for the purposes of § 1985(3).")

All of the Defendants in the matters *sub judice* are part of the same governmental organization – the Village of Park Forest. They are not separate "people" capable of conspiring with one another. They function as one person representing the interests of the Village of Park Forest. Accordingly, Plaintiff's Count IV must be dismissed.

19

**F.      Count V must fail because there is no conspiracy to prevent.**

The Thorncreek Plaintiffs' Count V has alleged a wrongful failure to prevent a 42 U.S.C. § 1985 violation and seeks to impose liability pursuant to 42 U.S.C. § 1986. If this Court finds that there was no violation of the Equal Protection Clause in the first instance and/or if it finds that Plaintiff's conspiracy claim is barred by the intra-corporate conspiracy doctrine, then this count must necessarily fail. Accordingly, Plaintiff's Count V must be dismissed.

**IV.    Count II Must Fail Because There Was No Violation of Procedural and Substantive Due Process**

**A.      Claim was not ripe before filing federal actions.**

In *Williamson County Reg. Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 193-4 (1985), the Supreme Court set forth a special ripeness doctrine for constitutional property rights claims which precluded federal courts from adjudicating land use disputes until: (1) the regulatory agency has had an opportunity to make a considered definitive decision, and (2) the property owner exhausts available state remedies for compensation. In an oft-cited opinion by Judge Easterbrook, it was held that "[a] property owner may not avoid *Williamson* by applying the label 'substantive due process' to the claim. So too with the label 'procedural due process.' Labels do not matter. A person contending that state or local regulation of the use of land has gone overboard must repair to state court." *River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 167 (7th Cir. 1994) (citation omitted).

There is no question that the Plaintiffs did not avail themselves of state remedies. The alleged pattern of discrimination could have been addressed by Illinois state courts long before the properties went into foreclosure in early 2008. Indeed, various torts

actions may be available to provide tort remedies for interference with contracts and business expectancies. *Easter House v. Felder*, 910 F.2d 1387, 1405-06 (7th Cir. 1990). A state court action seeking a declaration that municipal action is invalid or went too far provides all the process that it due. *River Park*, 23 F.3d at 167. Because the Thorncreek plaintiffs fail to meet either of the two elements set forth in *Williamson*, the due process claims are not ripe for adjudication. Indeed, "litigants who neglect or disdain their state remedies are out of court, period." *See Forseth v. Village of Sussex, et al.,* 199 F.3d 363, 372-373 (7th Cir. 2000) (citing *River Park*, 23 F.3d at 165). These claims were not ripe for adjudication when they were brought. Accordingly, Count II of each pleading must now be dismissed.

### B.    There was No Violation of Thorncreeks' Right to Procedural Due Process

To establish a procedural due process violation of a property right, the plaintiff must establish that there is "(1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Hudson v. City of Chicago*, 374 F.3d 554, 559 (7th Cir. 2004) (citation omitted). Accordingly, a plaintiff asserting a procedural due process claim must have a protected property interest in that which he claims to have been denied without due process. *Barrows v. Wiley*, 478 F.3d 776, 780 (7th Cir. 2007).

To claim a property interest protected by the 14th Amendment, "a person…must have more than a unilateral expectation of [the claimed interest]. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 577 (1972). "A property interest of constitutional magnitude exists only when the state's discretion is 'clearly limited' such that the plaintiff cannot be denied the interest

'unless specific conditions are met.'" *Brown v. City of Michigan City, Ind.,* 462 F.3d 720, 729 (7th Cir. 2006) (quotations and citations omitted).

Plaintiffs have alleged that they have a property interest in: (1) operating a business (2) business licenses (3) permits (4) certificates of occupancy and (5) variances. Plaintiffs' also claim that they have no adequate post-deprivation remedies and that the actions of the Defendants were arbitrary, irrational and unreasonable.

In *Hudson v. Palmer*, 468 U.S. 517 (1984), the Supreme Court held that "[a]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the Due Process Clause if a meaningful post-deprivation remedy for the loss is available. *Id.* at 533. Indeed, where state-law remedies exist, a plaintiff must either avail itself of the remedies guaranteed by state law or demonstrate that the available remedies are inadequate. *Daniels v. Williams*, 474 U.S. 327 (1986) ("A complaint does not state a valid procedural due process objection – and a valid § 1983 claim – if it does not include a challenge to the fundamental fairness of the state's procedures…[I]f a procedural due process claim lack a colorable objection to the validity of the State's procedures, no constitutional violation has been alleged.") (footnote omitted). *Hudson*, 468 U.S. at 539.

It is clear that prior to filing these federal complaints, Plaintiffs did not avail themselves of post-deprivation remedies. If they had a legitimate claim of entitlement to a business license, permit, variance, etc., they could have filed a mandamus or injunctive action in state court. *See New Burnham Prairie Homes v. Village of Burnham*, 910 F.2d 1474, 1480 (7th Cir. 1990) (procedural due process claim fails because state provides the unsuccessful applicant for a building permit with a sufficient state remedy

to cure the sort of "random and unauthorized" denial of which the plaintiffs complain"). They did not take any such action. Further, there is no evidence that any action taken by Village administrators or the Village's racially diverse Board of Trustees was based on the race of Thorncreek's tenants. *See Burrell v. City of Kankakee*, 815 F.2d 1127 (7th Cir. 1987) (rejecting developer's substantive due process claim that plan commission and city council rejected petition to rezone based on race). That they are seeking damages which were unavailable in state court is equally unavailing. Remedies have been held to be adequate when injunctive and not monetary relief is available. *Hamlin v. Vaudenberg*, 95 F.3d 580, 585 (7th Cir. 1996). *See also, Indiana Land Company v. City of Greenwood*, 378 F.3d at 712 (rejecting argument that declaratory relief was inadequate because it did not provide for damages). The alleged procedural due process violations committed by the Village were apparently not of a sufficient magnitude for Thorncreek to pursue available state remedies. It was only after the Village brought its state complaint for injunctive relief that the Thorncreek Plaintiffs decided to bring these federal complaints. In so doing, they have doomed their procedural due process claim.

### C. There was No Violation of Thorncreek's Right to Substantive Due Process

Thorncreek has also brought a claim for violation of substantive due process, "an area of the law famous for its controversy, and not known for its simplicity." *Schaper v. City of Huntsville*, 813 F.2d 709, 716 (5th Cir. 1987). This Circuit has acknowledged that substantive due process claims can be brought in the context of property rights. *New Burnham*, 910 F.2d at 1479. However, the scope of substantive due process is very limited. *Belcher v. Norton*, 497 F.3d 742, 753 (7th Cir. 2007); *see also Lee v. City of*

*Chicago*, 330 F.3d 456, 467 (7th Cir. 2003) ("substantive due process is not 'blanket protection against unjustifiable interferences with property'") (citations omitted). Unless a governmental action infringes on a plaintiff's fundamental rights, substantive due process requires only that the government's action be rationally related to a legitimate government interest. *Lee*, 330 F.3d at 467. Again, corporate plaintiffs such as the Thorncreek entities have no fundamental rights. *See Nat'l Paint & Coatings Ass'n*, 45 F.3d at 1129.

This Circuit has cautioned that "substantive due process does not confer on federal courts a license to act as zoning boards of appeals." *Albiero v. City of Kankakee*, 122 F.3d 417, 420 (7th Cir.1997) (citing *River Park Inc. v. Highland Park*, 23 F.3d 164, 165 (7th Cir. 1994). A property owner challenging a land-use regulation as a violation of due process is therefore obliged to show that the regulation is arbitrary and unreasonable, bearing no substantial relationship to public health, safety, or welfare. *E.g., Greater Chicago Combine & Ctr., Inc. v. City of Chicago*, 431 F.3d 1065, 1071 (7th Cir. 2005).

One prerequisite for a cognizable claim for substantive due process is an underlying constitutionally protected property interest. *Swartz v. Scruton*, 964 F.2d 607, 609 (7th Cir. 1992)(*see also Gen. Auto Serv. Station v. City of Chi.*, 526 F.3d 991 (7th Cir. 2008). Further, before a court will even consider whether the interference with property is arbitrary or irrational, the property owner must first establish either an independent constitutional violation or the inadequacy of state remedies to redress the deprivation. *Lee,* 330 F.3d 456, at 467. *See also Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir. 1996). If this Court were to find that the Plaintiffs' federal claims fail,

then there would be no independent constitutional violation upon which to base its substantive due process claim. *See LaBella*, 628 F.3d at 943. *See also LaSalle Bank v. City of Oakbrook Terrace*, 2008 WL 191190 at 4-5 (N.D. Ill. 2008). Further, Plaintiff cannot show why state law remedies are inadequate.

Even if the Thorncreek Plaintiffs could show an independent constitutional violation or that state remedies are inadequate, they would still be unable to show that the Village's land use practices are "utterly lacking in rational justification." *Brown v. Michigan City, Ind.*, 462 F.3d 720, 733 (7th Cir. 2006). Decisions rendered by the Village relating to the denial of a business license, sign permits or certificates of occupancy were based on relevant portions of the Village Code and/or outstanding code violations. The Village refused to issue a permit   to use a leasing office because it believed that a conditional use permit was necessary so as to make the office ADA compliant. These land use practices can hardly be said to be utterly lacking in rational justification. Accordingly, Count II must be dismissed.

### D.     If there is no violation of Plaintiffs' 14th Amendment right to Due Process, Plaintiff's Count VII alleging a violation of Due Process Clause of the Illinois Constitution must similarly fail.

Plaintiffs allege in Count VII that the Defendants violated the Due Process Clause of the Illinois Constitution which provides that "no person shall be deprived of life, liberty or property without due process of law nor denied the equal protection of the law." Ill. Constitution, Art.1, § 2. Absent any authority supporting a broader construction, the Illinois Due Process Clause may be interpreted the same as the federal Due Process Clause. *Travelers Cas. & Sur. Co. v. Interclaim (Bermuda) Ltd.*, 304 F.Supp.2d 1018 (N.D. Ill. 2004). The Illinois Supreme Court has made clear that the Illinois due

25

process guarantee is not necessarily co-extensive with federal due process protections. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). Although the Illinois Supreme Court "may, in construing the Illinois Constitution's guarantee of due process, look for guidance and inspiration to constructions of the Federal due process clause by the Federal courts, the final conclusions on how the due process guarantee of the Illinois Constitution should be construed are for [the Illinois] court to draw." *Id.* at 1276 (citations omitted). In deciding whether there was a violation of the Illinois Constitution's guarantee to due process, the Defendants' ask that this Court to apply the same reasoning to the Plaintiffs' federal substantive and procedural due process claim.

As a further basis for dismissal of Plaintiffs' state due process claim, the Defendants are entitled to the protection of the Illinois Tort Immunity Act. Pursuant to 745 ILCS 10/2-104 and 745 ILCS 10/2-206, the Village and individual defendants are immune from any injury caused by the denial of any permit (i.e. conditional use), license (i.e. business license) or certificate (i.e. certificate(s) of occupancy). Accordingly, the Defendants respectfully request that this Court dismiss Count VII.

**V.** **Plaintiff's Counts III and IX Must Fail Because There Was No Taking/Inverse Condemnation of the Thorncreek Properties or a Land Use Violation**

Plaintiffs allege in Count III that the Village's actions amounted to a regulatory taking that denied all beneficial and productive use of their properties. Plaintiffs' Count IX (Land Use) is essentially a mirror-image of the takings claim. Both must fail for the same reasons.

## A.    Takings and Land Use Claim Are Not Ripe for Adjudication

Much like the due process claims, Thorncreeks' federal takings (bundled with a state-law claim for inverse condemnation) and state-law "land use" claims, are also unripe when measured against the *Williamson* two-step analysis. *See Vigilante v. Village of Wilmette*, 88 F.Supp.2d 888, 889 (N.D. Ill. 2000) ("federal courts, relying on *Williamson*, have dismissed the vast majority of takings claims brought in federal court"). Long before these federal matters were brought, the Thorncreek entities could have pursued an inverse condemnation action in state court. They did not. *See Biddison v. City of Chicago*, 921 F.2d 724, 727-728 (7th Cir. 1991) (*citing* Ill. Const. art. 1, § 15). This Circuit has held that takings and land use claims such as those at issue in the matter *sub judice* are not ripe until "all efforts to avoid the restriction or obtain compensation for it have been exhausted." *Marusic Liquors, Inc. v. Daley*, 55 F.3d 258, 260 (7th Cir. 1995).

Recognizing at the outset that these claims are not yet ripe, Plaintiffs allege that the takings claim had to be brought "prior to receiving a state determination on the issue because the claims asserted by the Village appear to give rise to compulsory counterclaims under F.R.C.P. 13, which must be asserted here or they are potentially subject to loss." (See e.g. 2008 C 869, Doc. 102, pg. 36, ¶180 and Doc. 69, pg. 38, ¶185) (see also 2008 C 1225, Doc. 22, pg. 65, ¶ 182). However, the Village only brought claims against Thorncreek Apartments II, LLC. Further, the Village only sought declaratory and injunctive relief as opposed to the damages that the Thorncreek entities are seeking in these matters. The Village never brought claims in any forum against Thorncreek Apartments I, LLC, Thorncreek Apartments III, LLC or Thorncreek

Management, LLC. Indeed, it was Thorncreek that initiated this federal litigation and piled on by filing two separate lawsuits even after the Village's initial state complaint was remanded by District Court Judge Charles R. Norgle, Sr.

As for the ripeness of the somewhat vague "land use" claim, Thorncreek explains that it did not resort to state remedies because the Village, "in most instances will not hear [Thorncreeks'] requests for business licenses, permits, certificates for occupancy and variances; and because any such remedies that are provided otherwise violate substantive and procedural due process as set forth herein." (See 2008 C 869, Doc. 22, ¶ 220). If that were the case, Thorncreek could have repaired to the state courts. Again, they did not and have instead chosen to litigate in the federal courts.

### B. Threat of Imminent Domain/Condemnation Insufficient to Avoid Ripeness Doctrine

Plaintiffs' alternate approach towards its takings claim relates to the Village's strategic plan that lists Thorncreek as one of many properties for re-development. (Def. 56.1, ¶33). Even if a strategic plan could be construed as a threat of eminent domain or condemnation, it does not amount to a takings. *See, SGB Financial Services, Inc. v. Cons. City of Indianapolis-Marion County, IN*, 235 F.3d 1036 (7th Cir. 2000) (rejecting takings claim of apartment complex placed on "acquisition list" and owner's claim that it cannot sell the complex at a profit or borrow funds to improve because potential buyers/lenders feared the city would acquire property at low price); s*ee also Rock Energy Cooperative v. Village of Rockton*, 614 F.3d 745 (7th Cir. 2010) (rejecting takings claim that property was likely to be taken at any moment). While Thorncreek may dislike "living…under the Sword of Damocles, knowing that its property rights can be cut

28

off by the Village's eminent domain power at any moment", eminent domain proceedings were never brought against Thorncreek. *Id.* at 748.

### C. Even if the claims are ripe for adjudication, Thorncreek has failed to show a regulatory taking the deprived the three properties of all economic use

The Thorncreek plaintiffs have based their takings and land use claims upon the "more elusive concept" of a regulatory taking. *Muscarello v. Ogle County Board of Commissioners, et al.*, 610 F.3d 416, 421 (7th Cir. 2010) (citing *Lucas v. S.C. Coastal Council*, 505 U.S. 1003 (1992) (finding a regulatory taking only where "all economically beneficial or productive use of land" is denied). However, *Lucas* does not stand for the proposition that all zoning decisions that may diminish a property owner's use of her property are takings. *See, Covington Court v. Village of Oak Brook*, 77 F.3d 177, 179 (7th Cir. 1996) ("We frequently have reminded litigants that federal courts are not boards of zoning appeals.").

To prove a regulatory taking, the Village's actions (e.g. passage of the electrical ordinance, requiring a conditional use permit and denial of a business license due to outstanding code violations) must place such "onerous restrictions on land as to render it useless." *Muscarello*, 610 F.3d at 421. It cannot be said that because of the Village's actions, the three Thorncreek properties were rendered useless.

By way of example, in February 2007, Thorncreek Apartments I, LLC (a/k/a Area F) sold for $16 million dollars. (Def. 56.1, ¶39). While Plaintiffs assert that but for the Village's actions, the property would have sold for more. That it sold for *any* amount would indicate that it had some value. Further, in early 2008 when Thorncreek stopped making payments on its mortgages (Def. 56.1, ¶57), occupancy levels were hovering at

80-90%. (Def. 56.1, ¶58). Whether they were profitable or not, it cannot be said that the properties were rendered useless and deprived of all beneficial use.

In summary, Plaintiffs' Count III and IX cannot survive summary judgment because plaintiff failed to exhaust their available state remedies pursuant to *Williamson*. Even if the claims were ripe for adjudication, the record plainly reveals that the Thorncreek Plaintiffs were not deprived of all beneficial use of the properties and the properties were not rendered useless. Accordingly, Plaintiffs' Count III alleging a federal takings/inverse condemnation and Plaintiffs' Count IX alleging "land use" must be dismissed.

## VI. The Village President, Board of Trustees and Village Clerk Are Entitled To Absolute Immunity for Legislative Acts

As a preliminary matter, it is well-settled law that claims against municipal officers in their official capacities are really claims against the municipality and, thus, are redundant when the municipality is also named as a defendant. *Kohn v. Mucia*, 776 F.Supp. 348 (N.D.Ill. 1991). The Village of Park Forest is named in each count. Accordingly, the claims against the individually-named defendants, in their official capacities, must be dismissed.

City officials are afforded absolute immunity when acting in a legislative capacity. *Bogan v. Scott-Harris,* 523 U.S. 44, 52-56 (1998). A defendant is deemed to be acting in a legislative capacity while engaged in determining, formulating, or enacting policies, rules or laws. *Chicago Miracle Temple Church v. Fox*, 901 F. Supp. 1333, 1342-43 (N.D. Ill. 1995). Absolute immunity shield's a legislator's conduct even when that conduct is based on improper motives. *Bogan*, 523 U.S. at 52-56 (1998) (whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the

officials performing it."). This circuit has recognized the absolute immunity extends to municipal legislators. *Reed v. Village of Shorewood*, 704 F.2d 943, 952 (7th Cir. 1983); (see also *Union Pacific Railroad Co. v. Village of South Barrington, et al.*, 958 F.Supp. 1285, 1291 (N.D. Ill. 1997).

The Village Board has no involvement with the issuance of business licenses or certificates of occupancy. The Board's only direct involvement with Thorncreek was its consideration of Thorncreek's Petition for Conditional Use to move its leasing office. It was never brought to the Board's attention until a September 4, 2007 Rules meeting where no action was taken. (Def. 56.1, ¶¶50, 51, 55). The petition was never placed on a regular Village Board agenda because the Village first wanted compliance with the Plan's Commission's recommendations. (Def. 56.1, ¶56).

Another example of Board involvement is the passage of the Crime Free Housing Ordinance (Def. 56.1, ¶54) and the amendment to Section 18-290 of the Village Code calling for increase electrical amperage at a change of occupancy (discussed *supra*). These activities are part of the legislative process for which there is absolute immunity. The Village Clerk, who was appointed in January 2008 (Def. 56.1, ¶7), took meeting minutes. She had no discretion in determining whether a business license should issue or not. In summary, the Village Board members, the Village Clerk and Mayor Ostenburg are entitled to dismissal based upon absolute immunity.

## VII.    The Defendants Are Entitled to Qualified Immunity

The Defendants named in their individual capacities are entitled to qualified immunity. This immunity has been extended to "government officials performing discretionary functions…insofar as their conduct does not violate clearly established

31

statutory or constitutional rights which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). When this defense is at issue, a two-part inquiry is triggered. The court (1) considers whether the facts that the plaintiff has shown make out a violation of a constitutional right and (2) inquires whether the constitutional right was clearly established at the time of its alleged violation. *Id.* at 231. The sequence in which these two inquires are to be addressed is left to the "sound discretion" of the court. *Id.* at 236-7. Qualified immunity is designed to protect defendants "who act in ways they reasonably believe to be lawful." *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008) (citations omitted). However, qualified immunity is not lost merely because the defendant's conduct violated a state law, rule or regulation. *Stevens v. Umsted*, 131 F.3d 697, 707 (7th Cir. 1997) (*See also Kompare v. Stein*, 801 F.2d 883 (7th Cir. 1986) (defendant did not commit a constitutional violation by allegedly violating a county ordinance).

When addressing the defense of qualified immunity, "the inquiry focuses on the objective legal reasonableness of the action, not the state of mind or good faith of the officials in question." *Erwin v. Daley*, 92 F.3d 521, 525 (7th Cir. 1996), *cert. denied*, 519 U.S. 1116 (1997). This Circuit has specifically concluded that "proof of spite" does not nullify the qualified immunity defense. *Anderson v. Romero*, 72 F.3d 518, 521 (7th Cir. 1995). The subjective motives of the defendant are legally irrelevant and have no place in the analysis of whether a defendant should be granted qualified immunity. *Vickery v. Jones*, 100 F.3d 1334, 1342-3 (7th Cir. 1996).

For reasons set forth within this memorandum of law, the Defendants maintain that the Plaintiffs have failed to show a violation of a constitutional right. Further,

existing law for plaintiffs' various constitutional claims is not clearly established with respect to the alleged wrongdoing in this case. They are entitled to qualified immunity.

**VIII.  The Village of Park Forest Cannot Be Subject to Liability for the Acts of the Village Manager or Building Commissioner Who Do Not Have Final Policy-Making Authority**

Municipalities are not vicariously liable under § 1983 for their employee's alleged constitutional violations. *See, Monell v. New York Dep't of Social Servs.*, 436 U.S. 658 (1978). They are only liable for their own policies. There are three instances in which a municipality can be said to have violated the civil rights of a person because of its policy: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Calhoun v. Ramsen*, 408 F.3d 375 (7th Cir. 2005). Of the three bases for establishing public entity liability, only the third, whether a person with final policy-making authority caused the constitutional injury, is arguably applicable under these circumstances.

The issue turns to who within the Village of Park Forest is a person with final policy-making authority. The determination of those officials whose decisions represent official policy of the municipality (in other words who are the final policymakers) is a question of law. *Jett v. Dallas Independent School District*, 491 U.S. 701, 737 (1989). A municipality's policy can only be made by its lawmakers or by "those whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694. The exercise of a municipal official, standing alone, will not trigger liability for a municipal

33

entity. *See, Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (fact that an official – even a policymaking official – has discretion in the exercise of a particular function does not, without more, give rise to municipal liability based on an exercise of that discretion"). In determining who has final policymaking authority, this circuit has recognized the difference between those who possess executive power (i.e., Village Manager Tom Mick) versus those who possess legislative power. "Generally a person holding only executive power does <u>not</u> have the policymaking authority for purposes of § 1983." *Rasche v. Village of Beecher*, 336 F.3d 588, 601 (7th Cir. 2003) (holding that the policymaking authority in the city structure would be the city council, or here the board of trustees") (emphasis added).

In Illinois, neither the Village Manager nor a mayor is a final policy-maker. *Vela v. Village of Sauk Village*, 218 F.3d 661, 666 (7th Cir. 2000). A board of trustees is the final policymaker. The Village Board enacts legislation and considers items such as Thorncreek's petition for conditional use. The Village Manager serves at the pleasure of the Village Board of Trustees. The Village Manager's discretionary decisions relating to a property owner cannot give rise to municipal liability. Accordingly, the Village of Park Forest should be dismissed from Plaintiff's federal counts I-V.

## IX.     Plaintiffs' Count VIII Must Fail Because There Is No Violation of the Illinois Civil Rights Act

Although not specifically cited, it is assumed that Plaintiff's Count VIII is premised under the Illinois Civil Rights Act of 2003, 740 ILCS 23/1, *et seq.* (West 2008) ("the Act"). As a preliminary matter, to the extent that the corporate plaintiffs seek relief under the Act against the individually named Defendants, the claim must fail. The plain language of the Act provides that relief can only be sought against governmental

entities versus a state actor. *See* 740 ILCS 23/5. Further, the Thorncreek plaintiffs' lack standing to assert claims on behalf of their tenants – none of whom are parties to these actions. The Act prohibits a unit of local government to exclude a person from participating in or reaping benefits under any program or activity on the grounds of race, color, national origin or gender. 740 ILCS 23/5(a)(1). Accordingly, Count VIII should be dismissed.

## CONCLUSION

For the foregoing reasons, the Defendants, VILLAGE OF PARK FOREST, an Illinois Municipal Corporation, and all individually named Defendants, respectfully prays that judgment be entered in their favor and against the Plaintiffs in accordance with the foregoing and for such other relief as this Honorable Court deems just and proper.

Respectfully submitted by,

/s/ Michael R. Hartigan

One of the Attorneys for the
Defendants, Village of Park Forest, et al.

HARTIGAN & O'CONNOR P.C.
20 N. Clark Street – Suite 1250
Chicago, Illinois 60602
Telephone:    (312)201-8880
Facsimile:    (312)201-8905
E-mail:        mhartigan@haritganlaw.com

## CERTIFICATE OF SERVICE

The undersigned, an attorney, states that on the 22nd day of August, 2011, he electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification to all counsel of record.

/s/Michael R. Hartigan

One of the Attorneys for the
Defendants, Village of Park Forest, et al.

HARTIGAN & O'CONNOR P.C.
20 N. Clark Street – Suite 1250
Chicago, Illinois 60602
Telephone:    (312)201-8880
Facsimile:    (312)201-8905
E-mail:       mhartigan@haritganlaw.com